**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LASSANA MAGASSA,

                 Plaintiff,

    v.

FEDERAL BUREAU OF INVESTIGATION,

               Defendant.

Civ. A. No. 19-1952 (KBJ)

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dated: August 18, 2020

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Chief, Civil Division

By:      _____//s//_____
JOHN C. TRUONG
D.C. BAR #465901
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2524
Fax: (202) 252-2599
E-mail: John.Truong@usdoj.gov
Counsel for Defendant

i

# **TABLE OF CONTENTS**

BACKGROUND…………………………………………………………………………………1

STANDARD OF REVIEW……………………………………………………………………3

ARGUMENT………………………………………………………………………………...4

    I.    The FBI Conducted Adequate and Reasonable Searches for Responsive
        Records……………………………………………………………………………4

    II.    The FBI Properly Invoked Exemption 3……………………………………..6

    III.    The FBI Invoked Exemptions 6 and 7 (c) to Protect Personal Identifying
        Information…………………………………………………………………..9

        A.    FBI Special Agents and Professional Staff………………………11

        B.    Non-FBI, Federal Employees…………………………………………14

        C.    Third Party Merely Mentioned in the Files………………………15

    IV,    The FBI Properly Applied Exemption 7(E) to Protect Law Enforcement
        Techniques……………………………………………………………………16

        A.    FBI non-public web addresses………………………………………...17

        B.    Collection and analysis of information techniques………………………18

        C.    Information related to polygraphs ………………………………………18

        D.    Sensitive investigation file numbers.   …………………………………19

        E.    Identity of FBI squad and unit…………………………………………...19

        F.    Information on specific investigation…………………………………20

        G.    Types and timing of investigation………………………………………21

    V.    The FBI Has Satisfied Its Segregability Obligations……………………………21

CONCLUSION…………………………………………………………………………………..23

**TABLE OF AUTHORITIES**

*Federal Cases*

*Abdeljabbar v. ATF*,
   74 F.Supp.3d 158 (D.D.C. 2014)................................................................. 13, 21
*ACLU v. U.S. Dep't of Justice*,
   655 F.3d 1 (D.C. Cir. 2011).............................................................................9, 12
*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...........................................................................................3
*Armstrong v. Exe. Office of the President*,
   97 F.3d 575 (D.C. Cir. 1996)............................................................................22
*Baker & Hostetler LLP v. U.S. Dep't of Commerce*,
   473 F.3d 312 (D.C. Cir. 2006)............................................................................4
*Banks v. U.S. Dep't of Justice*,
   813 F.Supp.2d 132 (D.D.C.2011).....................................................................14
*Barouch v. U.S. De'pt of Justice*,
   962 F.Supp.2d 30 (D.D.C. 2013).......................................................................14
*Bast v. U.S. Dep't of Justice*,
   665 F.2d 1251 (D.C. Cir. 1981).........................................................................12
*Beck v. U.S. Dep't of Justice*,
   997 F.2d 1489 (D.C. Cir. 1993)...........................................................................9
*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011)................................................................... 12, 17-18
*Braga v. FBI*,
   910 F.Supp.2d 258 (D.D.C. 2012)....................................................................10
*Brayton v. Office of U.S. Trade*,
   Rep., 641 F.3d 521 (D.C. Cir. 2011) ...................................................................3
*Brick v. U.S. Dep't of Justice*,
   385 F. Supp. 3d 37 (D.D.C. 2019(.................................................................9, 20
*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...........................................................................................3
*Chambers v. U.S. Dep't of Interior*,
   568 F.3d 998 (D.C. Cir. 2009)............................................................................4
*Charles v. U.S Dep't of*,
   Def., 979 F. Supp. 2d 35 (D.D.C. 2013) ...........................................................22
*CIA v. Sims*,
   471 U.S. 159 (1985) ...........................................................................................8
*Concepcion v. FBI*,
   606 F. Supp. 2d 14 (D.D.C. 2009)............................................................... 19, 20

*Davis v. U.S. Dep't of Justice*,
   968 F.2d 1276 (D.C. Cir. 1992)..........................................................9, 12, 15-16
*Defenders of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009)..........................................................3
*Dep't of Justice*,
   296 F. Supp. 3d 109 (D.D.C. 2017) ..........................................................7
*DiBacco v. U.S. Dep't of the Army*,
   795 F.3d 178 (D.C. Cir. 2015)..........................................................8
*Fitzgibbon v. CIA*,
   911 F.2d 755 (D.C. Cir. 1990)..........................................................7-8
*Gov't Accountability Project v. FDA*,
   206 F. Supp. 3d 420 (D.D.C. 2016) ..........................................................7
*Int'l Counsel Bureau v. Dep't of Defense*,
   864 F. Supp. 2d 101 (D.D.C. 2012) ..........................................................5-6
*Iturralde v. Comptroller of Currency*,
   315 F.3d 311 (D.C. Cir. 2003)..........................................................5
*Jennings v. Dep't of Justice*,
   230 F. App'x 1 (D.C. Cir. 2007) ..........................................................5
*Johnson v. Exec.Office for U.S. Attorneys*,
   310 F.3d 771 (D.C. Cir. 2002)..........................................................22
*Kay v. FCC*,
   976 F.Supp. 23 (D.D.C. 1997)..........................................................11
*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009)..........................................................4, 7
*Lazaridis v. U.S. Dep't of State*,
   934 F. Supp. 2d 21 (D.D.C. 2013)..........................................................16
*Martin v. Dep't of Justice*,
   488 F.3d 446 (D.C. Cir. 2007)..........................................................15
*Mayer Brown LLP v. Internal Revenue Serv.*,
   562 F.3d 1190 (D.C. Cir. 2009)..........................................................17
*McCready v. Nicholson*,
   465 F.3d 1 (D.C. Cir. 2006)..........................................................4
*McGehee v. CIA.*,
   697 F.2d 1095 (D.C. Cir. 1983)..........................................................3
*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*,
   566 F.2d 242 (D.C. Cir. 1977)..........................................................22
*Mezerhane de Schnapp v. USCIS*,
   67 F. Supp. 3d 95 (D.D.C. 2014)..........................................................15
*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981)..........................................................4

*Nation Magazine, Wash. Bureau v U.S. Customs Serv.*,
  71 F.3d 885 (D.C. Cir. 1995) ........................................................................ 13, 16
*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) ...................................................................................12
*People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*,
  745 F.3d 535 (D.C. Cir. 2014) ....................................................................10
*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ...................................................................4-5
*PHE, Inc. v. U.S. Dep't of Justice*,
  983 F.2d 248 (D.C. Cir. 1993) ........................................................ 17, 20-21
*Piper v. U.S. Dep't of Justice*,
  294 F. Supp. 2d 16 (D.D.C. 2003) .......................................................... 18-19
*Pratt v. Webster*,
  673 F.2d 408 (D.C. Cir. 1982) ....................................................................11
*Prison Legal News v. Samuels*,
  787 F.3d 1142 (D.C. Cir. 2015) ....................................................................9
*Qatanani v. Dep't of Justice*,
  No. 12 CV 4042, 2015 WL 1472227 (D.N.J. Mar. 31, 2015) ...................... 17-18
*Rodriguez v. U.S. Dep't of the Army*,
  31 F. Supp. 3d 218 (D.D.C. 2014) .................................................................10
*Roth v. U.S. Dep't of Justice*,
  642 F.3d 1161 (D.C. Cir. 2011) .............................................................. 10, 12
*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) ...............................................................5, 15
*Schrecker v. U.S. Dep't of Justice*,
  349 F.3d 657 (D.C. Cir. 2003) ................................................................ 12, 15
*Skinner v. U.S. Dept. of Justice*,
  2010 744 F. Supp. 2d 185 (D.D.C. 2010) ......................................................21
*Tracy v. U.S. Dep't of Justice*,
  117 F. Supp. 3d 1 (D.D.C. 2015) .................................................................20
*Tracy v. U.S. Dep't of Justice*,
  191 F.Supp.3d 83 (D.D.C. 2016) ..................................................................17
*U.S. Dep't of Def. v. Fed. Labor Relations Auth.*,
  510 U.S. 487 (1994) .....................................................................................9
*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) ................................................................................ 10, 12
*U.S. Dep't of Justice*,
  818 F. Supp. 2d 131 (D.D.C. 2011) .............................................................3-4
*Washington v. U.S. Dep't of Justice*,
  746 F.3d 1082 (D.C. Cir. 2014) ...................................................................12

*Washington v. U.S. Dep't of Labor*,
   478 F. Supp. 2d 77 (D.D.C. 2007)........................................................................4
*Weisberg v. Dep't of Justice*,
   705 F.2d 1344 (D.C. Cir. 1983)..........................................................................4
*Wilbur v. CIA*,
   355 F.3d 675 (D.C. Cir 2004).............................................................................5

## Federal Statutes

5 U.S.C. § 552(b) ................................................................................................21
5 U.S.C. § 552(b)(3)...........................................................................................7-8
5 U.S.C. § 552(b)(6).............................................................................................9
5 U.S.C. § 552(b)(7)(E) ......................................................................................16
28 U.S.C. § 533 ..................................................................................................11
28 U.S.C. § 534 ..................................................................................................11
50 U.S.C. § 3024(i)(1) ........................................................................................7-8
50 U.S.C. § 3024(i)(2)(A)......................................................................................8

## Federal Regulations

28 C.F.R. § 0.85 .................................................................................................11

Plaintiff Lassana Magassa filed this Freedom of Information Act ("FOIA") case against Defendant Federal Bureau of Investigation ("FBI") seeking information about himself.  In total, the FBI located twenty-seven pages of records and produced ten pages in full. The FBI released seventeen pages with various redactions.  As explained below, the FBI appropriately invoked Exemption 3 to redact information that is permitted to be withheld under the National Security Act of 1947.  Moreover, the FBI redacted personal identifying information under Exemptions 6 and 7(C) to protect from clearly unwarranted invasion of privacy.  Finally, the FBI excised information relating to law enforcement techniques and procedure under Exemption 7(E).  For these reasons and those explained below, the Court should grant summary judgment in the FBI's favor.

## BACKGROUND

Plaintiff Lassana Magassa alleges that he initially applied to work for the FBI in 2007 after college. Complaint ("Compl.") ¶ 2.  Plaintiff claims that he did not meet with the FBI until 2011, believing that it was an interview for his 2007 application. *Id.*  However, the FBI queried Plaintiff mostly about a person by the name "Adis," one of Plaintiff's acquaintances.  *Id.* Plaintiff alleges that the FBI did not contact him after that 2011 meeting.  *Id.*

In 2015, Plaintiff applied to work for Delta Airline as a service/ramp agent, which subjected him to extensive background checks including extensive interviews by the U.S. Customs and Border Protection ("CBP").  Compl. ¶¶ 6, 7.  During this interview process, Plaintiff again expressed his interest of working for the FBI during the investigation process.  *Id.* ¶¶ 7, 8.  Delta eventually offered Plaintiff a job in June 2015 and he started working as a Cargo Service Agent in Seattle, WA. *Id.* ¶¶ 10, 11.

According to Plaintiff, in October 2015, a CBP agent reached out to Plaintiff for an interview and, after learning of Plaintiff's interest in working in law enforcement, the agent passed along Plaintiff's information to the FBI.  Compl. ¶ 11.  Plaintiff claims that the CBP agent also connected him to FBI Special Agent Minh Truong.  *Id.* ¶ 12.  Eventually, S/A Truong and Plaintiff met in October 2015, and S/A Truong asked Plaintiff to work as a paid FBI informant.  *Id*. ¶ 14.  Plaintiff declined the offer.  *Id*. ¶ 15.  Plaintiff maintains that S/A Truong attempted to reach out to him again in September 2016 but the two did not connect. *Id.* ¶ 16.

Plaintiff alleges that after he rejected the FBI's overture, he began to experience travel difficulties in October 2016 and, eventually, his airport security privileges were revoked. Compl. ¶ 17.   Consequently, Plaintiff lost his job.  Plaintiff attributed the revocation of his security privileges to his rejection to work as an FBI informant.  *Id.* ¶ 18. In February 2017, Plaintiff submitted a FOIA request to the FBI seeking records concerning himself.  Declaration of Michael G. Seidel ("Seidel Decl.") ¶ 6.  Ultimately, the FBI reviewed twenty-seven pages of records and released ten of those pages in full.[1]  Seidel Decl. ¶¶ 14, 72. The FBI produced the remaining seventeen pages with redactions.  *Id.*  At base, the remaining dispute in this case centers on the seventeen pages of redacted records.

For additional procedural and factual background information, the FBI also refers the Court to the Statement of Material Facts Not In Genuine Dispute, concurrently filed.

---

[1]     The bates numbering system for the twenty-seven pages of records is: "FBI(19-cv-1952)-1 through FBI(19-cv-1952)-21."  For the sake of brevity, the Memorandum shall refer to those records as "Document 1" to "Document 27."

2

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is up to the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137

(quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Once the court determines that an agency has released all non-exempt material, it has no

further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*,

684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

### I.     The FBI Conducted Adequate and Reasonable Searches for Responsive Records

The  detailed declaration from Michael G. Seidel demonstrates that the agency met its

FOIA obligations by searching all locations likely to contain responsive records.  The FOIA

requires agencies to undertake a search that is "reasonably calculated to uncover all relevant

documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

An agency can establish the reasonableness of its search by "reasonably detailed,

nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of

Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). Such affidavits are sufficient if they "set[]

forth the search terms and the type of search performed, and aver[] that all files likely to

contain responsive materials (if such records exist) were searched." *Chambers v. U.S. Dep't of

Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (quoting *McCready v. Nicholson*, 465 F.3d 1, 14

(D.C. Cir. 2006)). This standard is not demanding. "[I]n the absence of countervailing

evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the

scope and method of the search conducted by the agency will suffice . . . ." *Perry v. Block*, 684

F.2d 121, 127 (D.C. Cir. 1982). "Agency affidavits are accorded a presumption of good faith,

which cannot be rebutted by 'purely speculative claims about the existence and discoverability

of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)

(citation omitted); *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir 2004) ("[M]ere

speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records."). Moreover, the D.C. Circuit has held that "'the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.'" *Jennings v. Dep't of Justice*, 230 F. App'x 1, 1 (D.C. Cir. 2007) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). Thus, an agency's inability to locate every single responsive record does not undermine an otherwise reasonable search. *Iturralde*, 315 F.3d at 315 ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate . . . . After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them."); *Toensing v. Dep't of Justice*, Civ. A. No. 11-1215, 2012, WL 4026099, at *19 (D.D.C. Sept. 13, 2012) ("[T]he mere fact that an otherwise adequate search did not uncover [requested] recordings does not automatically render that search inadequate"); *Int'l Counsel Bureau v. Dep't of Defense*, 864 F. Supp. 2d 101, 109 (D.D.C. 2012) ("failure to uncover [ ] four additional videos [does not] render the original search inadequate.").

As detailed in the Seidel Declaration, the FBI meticulously described its search effort in this case. *See* Seidel Decl. ¶¶ 15-28. The FBI initially described the various systems that may house records potentially responsive to Plaintiff's FOIA requests. *Id*. ¶¶ 15-24. Next, the FBI explained its search for potentially responsive documents in the Central Records System ("CRS"), which consists of records relating applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI. *Id*. ¶¶ 17-18, 25-28. The FBI maintains CRS as part of its integrated mission as a law enforcement,

5

counterterrorism, and intelligence agency. *Id.* ¶ 17.  The CRS spans the entire FBI

organization and encompasses the records of FBI Headquarters ("FBIHQ"), FBI Field Offices,

and FBI Legal Attaché Offices ("Legats") worldwide. *Id.*

Because Plaintiff is seeking information about himself the FBI searched its CRS via the

index search methodology.  Seidel Decl. ¶ 28.  In response to Plaintiff's FOIA request, the FBI

performed a search using the term "Lassana Magassa" and its three-way phonetic breakdown

of the term.  *Id.* ¶ 27.  After Plaintiff filed this FOIA lawsuit, the FBI conducted a subsequent

search, which yielded similar files that were initially located during the administrative stage.

*Id.*  Given the FBI's search efforts in this case, the Court should find that the agency has

conducted an adequate search for responsive records.

## II.     The FBI Properly Invoked Exemption 3

The FBI properly relied on FOIA Exemption 3, and alternatively, FOIA Exemption

7(E),[2] to redact information in Documents 20 through 25 to protect from disclosure intelligence

sources and methods.  Seidel Decl. ¶ 40.

FOIA's Exemption 3 permits an agency to withhold information that is responsive to a

FOIA request when that information is "specifically exempted from disclosure by [another]

statute," provided that the applicable statute "(i) requires that matters be withheld from the public

in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for

withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The

task for the Court in analyzing an agency's Exemption 3 claims is relatively simple: determine

whether the statute in question "is one of exemption as contemplated by Exemption 3" and then

---

[2]     Additional detailed analysis of the FBI's use of Exemption 7(E) to redact this information
is further elaborated in Section IV.

determine whether "the withheld material falls within the statute." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). In analyzing whether an agency can rely upon a particular statute for an Exemption 3 withholding, a reviewing court "must first determine whether the statute is a withholding statute at all by deciding whether it satisfies the threshold requirement that it specifically exempt matters from disclosure[,]" *EPIC v. Dep't of Justice*, 296 F. Supp. 3d 109, 120 (D.D.C. 2017) (internal quotation and citations omitted). This determination is made by "look[ing] to the language of the statute on its face." *Gov't Accountability Project v. FDA*, 206 F. Supp. 3d 420, 429 (D.D.C. 2016) (internal quotation marks and citation omitted). After conducting this initial analysis, the court must then determine (1) whether the statute satisfies either of Exemption 3's disjunctive conditions for withholding the responsive information (*id.* at 428), and if so (2) whether the material the agency has withheld falls within the scope of the statute, *see Fitzgibbon v. CIA*, 911 F.2d 755, 761–62 (D.C. Cir. 1990).

Here, the FBI clearly satisfies the requirements of Exemption 3. The FBI invoked Exemption 3 to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. §3024(i)(1), which provides that the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods." Seidel Decl. ¶ 38. The NSA does not leave any discretion to agencies about withholding from the public information about intelligence sources and methods. *Id.* "To fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. § 3024(i)(2)(A), (B)." Seidel Decl. ¶ 39.

Under this guidance, the FBI, as one of the seventeen members of the intelligence community, must protect its intelligence sources and methods.  *Id.*

Most relevant here, the FBI redacted certain information in Documents 20 through 25 to protect both intelligence sources and methods under 50 U.S.C. § 3024(i)(1).  Seidel Decl. ¶ 40-41.  It is established law "that Section 102A(i)(1) of the National 48 Security Act of 1947 is a withholding statute for purposes of Exemption 3, because it "specifically exempt[s]" matters from disclosure, and it is further established that the statute satisfies one of Exemption 3's disjunctive conditions, because it "refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see also CIA v. Sims*, 471 U.S. 159, 167 (1985) (explaining that the "conclusion [that the National Security Act is a withholding statute] is supported by the plain meaning of the statute, by the legislative history of FOIA, and by every federal court of appeals that has considered the matter"); *DiBacco v. U.S. Dep't of the Army*, 795 F.3d 178, 197 (D.C. Cir. 2015) (noting that the plaintiff in that case "does not dispute, nor could she, that Section 3024(i)(1) is a valid Exemption 3 statute").  Indeed, the release of redacted information to Plaintiff would allow individuals to develop and implement countermeasures, resulting in the loss of significant intelligence information, sources, and methods relied upon by national policymakers and the IC to safeguard national security.  *Id.* ¶ 42.  Accordingly, the Court should grant summary judgment in the FBI's favor on Exemption 3.  *See also Brick v. U.S. Dep't of Justice*, 358 F. Supp. 3d 37, 47-48 (D.D.C. 2019) (awarding summary judgment to the government after finding in camera and public declarations logically explained that certain intelligence sources and methods would be revealed if the redacted information is released).

### III.    The FBI Invoked Exemptions 6 and 7(C) To Protect Personal Identifying Information

FBI applied Exemptions 6 and 7(C) to redact  identifying information of (1) special agents and professionals; (2) non-FBI federal government employees; and (3) a third-party merely mentioned in the files.  Seidel Decl.  ¶¶ 46-53; *see also Vaughn* Index.  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) excludes "records or information compiled for law enforcement purposes ... to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id*. § 552(b)(7)(C). Both exemptions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information." *Beck v. U.S. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although the balancing test is applied to both Exemption 6 and 7(C), "'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015) (quoting *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011)); *see also U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994) ("Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions.").  Specifically, "the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because 'Exemption 7(C)' s privacy language is broader than the comparable language in Exemption 6 in two respects.'" *Braga v. FBI*, 910 F.Supp.2d 258, 267 (D.D.C. 2012) (internal citation omitted).  First, Exemption 6

"encompasses 'clearly unwarranted' invasions of privacy, while Exemption 7(C) omits the adverb 'clearly.'" *Id.*  Second, Exemption 7(C) lowers the risk of harm standard from "would" to "could reasonably be expected to" constitute an invasion. *Id.*  The differences in the language between the two exemptions reflect Congress's decision to provide the government with "greater flexibility in responding to FOIA requests for law enforcement records or information" than in responding to requests for personnel, medical, and other similar files. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749,* 777 n.22 (1989).

Accordingly, if the documents withheld and information redacted were "compiled for law enforcement purposes," the Court need engage only in an analysis of whether the defendant properly redacted information and withheld documents pursuant to Exemption 7(C). *See People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 541 (D.C. Cir. 2014) (confining its FOIA analysis to Exemption 7(C) because its "privacy language is broader than the comparable language in Exemption 6" (quoting *Reporters Comm.*, 489 U.S. at 756); *Roth v. U.S. Dep't of Justice,* 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)")*Rodriguez v. U.S. Dep't of the Army*, 31 F. Supp. 3d 218, 231 (D.D.C. 2014).

Therefore, as an initial matter, the Court must determine whether Exemption 7 applies to the withholdings in this case.  "In order to withhold documents under Exemption 7, the agency must, as a preliminary matter" make a "threshold" showing demonstrating "that the records were compiled for a law enforcement purpose." *Kay v. FCC*, 976 F.Supp. 23, 37 (D.D.C. 1997). Agencies classified as law enforcement agencies receive deference to their

assertion that documents were compiled for a law enforcement purpose. *See Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982) (rooting deference in "the generally accurate assumption that federal agencies act within their legislated purposes"). A court's review of this threshold question is "necessarily deferential," but the review is "not vacuous." *Id.* at 421.

In this case, there cannot be any dispute that the records at issue were compiled for law enforcement purposes. "Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States." Seidel Decl. ¶ 44.  The FBI may obtain information to detect, prevent, or protect against federal crimes, threats to national security, or to collect foreign intelligence.  *Id.* ¶ 45.   To accomplish these missions, the FBI required to identify, develop, and implement law enforcement and intelligence gathering methods, techniques, procedures, and/or guidelines.  *Id.*  Under these facts, Documents 1 through 27 were compiled for a law enforcement purposes.

**(A)     FBI Special Agents and Professional Staff**

The FBI appropriately applied Exemption 7(C) to withhold identifying information of FBI special agents and professional staff found in Documents 4, 19 through 27.  *See* Seidel Decl. ¶ 49.  Under Exemption 7(C), a court first determines if there is a privacy interest in the information to be disclosed. *See ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6-7 (D.C. Cir.

2011).[3]  If the court finds a privacy interest, the next step is to balance the individual's privacy interest against the public interest, considering only the public interest "that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis*, 968 F.2d at 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).  It is the FOIA requester's obligation to articulate a public interest sufficient to outweigh the individuals' privacy interest, and the public interest must be significant. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Indeed, "[a]s a result of Exemption 7(C), ... FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information," *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (citing cases), including the names of "investigators, suspects, witnesses, ... informants," *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003), and public employees, *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981); *accord Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1092 (D.C. Cir. 2014).  It is well established that law enforcement personnel, witnesses, and informants have "an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were [part] of a law enforcement investigation." *Nation Magazine, Wash. Bureau v U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) (citations omitted).

Here, the FBI redacted the names and identifying information (employee identification numbers, telephone number, and email address) of FBI Special Agents ("SAs") and

---

[3]    As mentioned above, Exemption 7(C)'s privacy language in broader than its counter-part in Exemption 6 and, therefore, it is not necessary to separately consider Exemption 6 if the information falls squarely under the protection of Exemption 7(C)). *See Roth,* 642 F.3d at 1173. Therefore, the FBI's analyses herein will focus on withtholdings under Exemption 7(C).

professional staff who were responsible for conducting, supervising, and/or maintaining the investigations/administrative activities related to Plaintiff.  Seidel Decl. ¶ 49.  Specifically, special agents do not have a choice in their assignments and publicity of their duties may seriously prejudice their effectiveness in conducting other investigations or performing their day-to-day work.  *Id*. ¶ 50.  Special agents conduct official inquiries into various criminal and national security violation cases and the release of an SA's identity relating to a particular investigation/investigative activities could trigger hostility toward that SA. *Id*. ¶ 50. More importantly, disclosing the SA's identifying information would provide opportunities for the individuals targeted (or their sympathizers) to seek to inflict violence on a SA based on their participation in an investigation/in the deployment of certain investigative techniques. *Id*. ¶ 50. *Abdeljabbar v. ATF*, 74 F.Supp.3d 158*,*179 (D.D.C. 2014) (finding disclosure ATF's personnel may hinder the agency's ability to conduct ongoing investigations, may lead to unwarranted harassment, and may otherwise cause embarrassment and be an invasion of privacy as contemplated by the Exemption*.*).  On the other side of the scale, there is no discernable public interest to be advanced by revealing the SA's identities because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities.  *Id*. ¶ 50*.* Therefore, disclosure of identifying information of FBI's special agents would constitute a clearly unwarranted invasion of their personal privacy.

Similarly, the FBI excised identifying information of professional staff assigned to handle tasks related to Plaintiff's pre-employment background investigation. Seidel Decl. ¶ 51.  Like the special agents, these FBI professional staff were, and possibly are, in positions of access to information regarding official law enforcement investigations and could become targets of harassment if their identities were known. *Id.* ¶ 51. *Banks v. U.S. Dep't of Justice*,

13

813 F.Supp.2d 132, 144 (D.D.C.2011) ("Public identification of [law enforcement personnel] could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives." (internal quotation omitted).  These professional staff have substantial privacy interests in not having their identities released.  *Id.* ¶ 51. There is no counter-balancing public interest in having their identifying information released to Plaintiff. *Id.*

Accordingly, the Court should affirm the FBI's redactions of identifying information of special agents and professional staff in Documents 4, 19 through 27.

### (B)   Non-FBI, Federal Employees

The FBI excised identifying information of non-FBI, federal employees, in Documents 22 through 24, who assisted the FBI in its pre-employment background investigation of Plaintiff.  Seidel Decl. ¶ 52 & n.12.  The underlying bases for redacting these federal employees' personal information are similar to those of FBI professional staff.  *Id.* ¶ 52. Indeed, the release of these federal employees' names and/or identifying information in connection with their investigation/investigative activities could trigger hostility towards them by the targeted individuals.  *Id.; see Barouch v. U.S. De'pt of Justice*, 962 F.Supp.2d 30,  59- 61 (D.D.C. 2013) (holding that US Marshall's Service withholdings of government employees' names, addresses and other personally identifying information was proper under Exemption (b)(7)(C)).  There is no readily apparent public interest to be served by releasing this category of personal identifying information.  Therefore, the Court should enter judgment in favor of the FBI on this issue.

### (C)   Third Party Merely Mentioned in the Files

The FBI protected the name and identifying information of a third party in Documents 22 and 23 who was merely mentioned in the investigative records responsive to Plaintiff's request.  Seidel Decl. ¶ 53.  Under the law the FBI is permitted to withhold such information "unless disclosure is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *Schrecker v. Dep't of Justice,* 349 F.3d 657, 661 (D.C. Cir. 2003) (internal quotations and citations omitted).  At base, the core issue is whether the release of the third-party  information would shed light on whether the government had engaged in any illicit conduct. *Mezerhane de Schnapp v. USCIS*, 67 F. Supp. 3d 95, 104 (D.D.C. 2014) (observing that "[d]isclosure of the names of [third-party] individuals would not get Mezerhane any answers about possible agency misconduct, and would infringe upon the privacy interests of third parties not before the Court."). *See also Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007) ("[T]hird parties who may be mentioned in investigatory files ... have an obvious and substantial privacy interest in their information."); *SafeCard,* 926 F.2d at 1206  ("We now hold categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."); *Davis*, 968 F.2d at 1282 ("[E]ven if a particular privacy interest is minor, nondisclosure remains justified where ... the public interest in disclosure is virtually nonexistent.").

Here, the FBI redacted identifying information of a third-party individual because that person was only tangentially referenced in the records.  Seidel Decl. ¶ 53.  Indeed, the third-party individual was not of the FBI's investigative interest.  *Id.*  Therefore, the disclosure of

this third party's identifying information could subject this individual to possible harassment or criticism and focus derogatory inferences and suspicion on them. *Id. Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 38 (D.D.C. 2013) ("As a general rule, third-party identifying information contained in [law enforcement] records is 'categorically exempt' from disclosure.") (quoting *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C.Cir. 1995)).  At base, releasing information about an individual who was merely mentioned in an FBI investigative file would not significantly increase the public's understanding of the FBI's operations and activities.  Seidel Decl. ¶ 53.  Accordingly, the FBI appropriately withheld identifying information of a third party in Documents 22 and 23.

## IV.    The FBI Properly Applied Exemption 7(E) To Protect Law Enforcement Techniques

The FBI invoked Exemption 7(E) to withhold (i) FBI non-public web addresses; (ii) collection and analysis of information techniques; (iii) information related to polygraphs; (iv) sensitive investigation file numbers; (v) identity of FBI squad and unit; (vi) information on specific investigation; and (vii) types and timing of investigations.  *See* Seidel Decl. ¶¶ 36, 54-71.  FOIA Exemption 7(E) permits an agency to withhold records compiled for law enforcement purposes when production of the records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). An agency seeking to apply Exemption 7(E) must, accordingly, make two showings: (1) that the records were "compiled for law enforcement purposes," id., and (2) the agency must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. Internal Revenue Serv.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (quoting *PHE, Inc. v. U.S. Dep't of Justice,*

983 F.2d 248, 251 (D.C. Cir. 1993)).  These requirements must be met in a nonconclusory fashion, yet there is a "relatively low bar for the agency to justify withholding." *Blackwell*, 646 F.3d at 42.

As discussed in Section IV *supra*, there cannot be any dispute that the records at issue were compiled for law enforcement purposes.  *See* Section IV *supra* (citing Seidel Decl. ¶¶ 43-45).  As for each of the seven categories of information redacted from the records under Exemption 7(E), each is discussed below.

### A.      FBI non-public web addresses

From Documents 1 through 3, the FBI redacted non-public FBI intranet addresses. Seidel Decl. ¶ 57.   The protection is to guard against possible cyber-attacks on FBI secure communications.  *Id.*  The release of internal addresses could provide hackers with avenues to exploit the FBI's Information Technology system and pose substantial risks to FBI information systems. *Id.*  Courts that have considered this issue have permitted the government to withhold such information.  *Tracy v. U.S. Dep't of Justice*, 191 F.Supp.3d 83, 96–97 (D.D.C. 2016) (withholding address of internal FBI website), *aff'd*, 664 Fed. App'x. 8 (D.C. Cir. 2016); *see also Qatanani v. Dep't of Justice*, No. 12 CV 4042, 2015 WL 1472227, at *14 (D.N.J. Mar. 31, 2015) (withholding "an internal secure website address in order to prevent individuals from compromising its computer system that is essential to its law enforcement decisions."). Accordingly, the Court should grant summary judgment in the FBI's favor on redacting internal address in Documents 1 through 3.

**B.      Collection and analysis of information techniques**

The FBI excised from Documents 15, 19, and 22, information relating to the methods the FBI uses to collect and analyze information it obtains for investigative purposes. Seidel Decl. ¶ 58.  The release of this information would  reveal the methods of how and from where the FBI collects information and the methodologies employed to analyze the data.  *Id.*  Such disclosures would enable subjects of FBI investigations to circumvent those investigative techniques and undermine their effectiveness. *Id.*  Other courts have approved the withholding of these types of techniques under Exemption 7(E).  *Blackwell*, 646 F.3d at 42 (holding that methods of data collection, organization and presentation by an FBI system was withheld properly to avoid detection by criminals). Accordingly, the Court should similarly allow the FBI to continue to withhold information relating to the collection and analysis technique as redacted from Documents 15, 19, and 22.

**C.      Information related to polygraphs**

The FBI redacted information relating to the procedures and techniques used to conduct polygraph examination in Document 16.  Seidel Decl. ¶ 59 & n.13.  Although it is public knowledge that the FBI uses the polygraph test, the details of the agency's methodology "is highly guarded information."  *Id.* The disclosure of polygraph techniques and methods would allow applicants, employees, and targets of law enforcement investigations to develop countermeasures to circumvent the effectiveness of the examinations.  *Id.  Piper v. U.S. Dep't of Justice*, 294 F. Supp. 2d 16, 30 (D.D.C. 2003) (withholding polygraph test information on the ground that disclosure "has the potential to allow a cunning criminal to extrapolate a pattern or method to the FBI's questioning technique," and anticipate or thwart FBI's strategy).  The Court, therefore, should grant summary judgment in the FBI's favor on this redaction in Document 16.

### D. Sensitive investigation file numbers

The FBI redacted sensitive file numbers in Documents 20 through 25.  Seidel Decl. ¶ 60.
The file numbering system is not publically known and it identifies the investigative interest and
priority of the investigations.  *Id.*  The investigative file numbering convention essentially has
three portions: (i) the first portion identifies the investigative or intelligence programs; (ii) the
second portion contains a "two letter office of origination codes, indicating which FBI field
office or overseas FBI legal attaché originated the investigations at issue; and (iii) the third
portion indicates the numbers given to the unique investigative initiatives.  Seidel Decl. ¶¶  60-
62.  There is no apparent public interest to be achieved by disclosing this type of sensitive
information. *Concepcion v. FBI*, 606 F. Supp. 2d 14, 32 (D.D.C. 2009) (holding that informant
file numbers and other administrative markings are properly withheld for internal agency use and
are of no genuine interest to the public).  However, the release of the investigation file numbers
would allow criminals and foreign adversaries to gain insight into how FBI investigations may
be interrelated and when, why, and how the FBI pursued different investigative strategies.  *Id. ¶¶
62-63.* Accordingly, the Court should uphold the FBI's redaction of these sensitive file numbers
in Documents 20 through 25.

### E. Identity of FBI squad and unit

The FBI withheld identifying information of FBI squad and unit involved in this
investigation.  Seidel Decl. ¶ 64. The redactions are in Document 20, 22, and 24.  *Id.* n.14. The
location of the squads or units conducting the investigation identify the targets and the physical
areas of interest of the investigation and, viewed collectively, show a pattern or "mosaic" of the
investigation where information of a single location would not.  *Id.*  Making the locations public
would allow criminals or targets to avoid the locations and, thereby, disrupt the FBI's

investigative process.  *Id.*  To avoid having its investigation undermined, the FBI assiduously

safeguards this type of information.  *Id.* ¶¶ 64-65.  *Tracy v. U.S. Dep't of Justice*, 117 F. Supp.

3d 1, 4 (D.D.C. 2015) (holding that the agency's withholding of numbers and/or alpha

designators of sensitive FBI squads or units was proper under (b)(7)(E)).   Under these

circumstances, the FBI is entitled to summary judgment on this issue.

### F.      Information on specific investigation

The FBI redacted in Documents 20, 22, 23, and 24 information relating to a specific

investigation.  Seidel Decl. ¶ 66 & n.15.  "The focus has not been publicly disclosed."  *Id.* The

excised information indicates when and why the FBI pursues or shifts investigative focuses and

information  about the types of investigative intelligence the FBI possessed at particular points in

time.  *Id*. ¶ 67.  Disclosing this type of information "could enable criminal

elements/terrorists/foreign adversaries to discover non-public details about FBI

intelligence/evidence gathering methods and help them determine how they might modify their

operational security to deprive the FBI of such critical intelligence or evidence."  *Id*. ¶ 67.[4]

Indeed, releasing information on FBI specific investigations would compromise, among other

things, intelligence and evidence gathering capabilities. *Id.* ¶ 68. *See PHE, Inc.,* 983 F.2d at 251

(relying on FBI affiant to hold that the withholding of information on targets of specific

investigations would enable the individual to know "who would be interviewed, what could be

asked, and what records or other documents would be reviewed.").  Given the critical nature of

---

[4]       In further support of the redactions in Documents 20, 22, 23, and 24, the FBI is
submitting an *in camera* declaration for the Court's consideration. Seidel Decl. ¶ 68. *Brick,* 358
F. Supp. 3d at 43-47 (explaining and holding that where a case presents a circumstance in which
there is a risk of revelation of information that compromises legitimate secrecy interest *in
camera* declaration is wholly appropriate and even necessary).

information on specific investigations, the Court should find that the FBI properly redacted the information in Documents 20, 22, 23, and 24.

> **G.  Types and timing of investigations.**

The FBI protected from disclosure information relating to the types and dates of investigation contained in Documents 20, 22, and 24.  Seidel Decl. ¶ 69 & n.16.  The excised information, when considered with actual investigation and not in general discussion, reveals whether it is a "preliminary" or "full" investigation and the dates the FBI initiated the investigations.  *Id.; see Skinner v. U.S. Dept. of Justice*, 2010 744 F. Supp. 2d 185, 214-15 (D.D.C. 2010)  (holding that the withholding of circumstances and timing of search, arrest, and investigative techniques were proper.) The redacted information also contains the categorization of sensitive FBI investigations.  *Id.* ¶ 70.  The withheld information would reveal how investigations are categorized by FBI personnel, including the investigative "toolbox" available to the FBI in certain situations.  *Id.*; *see Abdeljabbar v. ATF*, 74 F. Supp. 3d 158,183 (D.D.C. 2014) (finding that the withholding of a strategy or use of a particular type of evidence gathered during an investigation was proper under (b)(7)(E)).  Furthermore, disclosure of this type of information would pose  national security threats to key information about the FBI's intelligence sources and methods, or its capabilities to gather evidence through various investigative techniques.  *Id*. ¶¶ 70-71.  Accordingly, the Court should enter summary judgment in the FBI's favor on these redactions.

> **V.  The FBI Has Satisfied Its Segregability Obligations**

FOIA requires that the FBI release "any reasonably segregable portion of a record" after applying the FOIA exemptions.  5 U.S.C. § 552(b).  Federal agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material.

*See Pinson v. U.S. Dep't of Justice,* No. 12-1872, 2016 WL 29245, at \*23 n.20 (D.D.C. Jan. 4, 2016).  When non-exempt information is "inextricably intertwined" with exempt information, reasonable segregation is not possible.  *See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  An agency may withhold an entire document – even portions that would not be exempt on their own – if it demonstrates "that the nonexempt portions of the document are so inextricable from the exempt portions that [the] document is not reasonably segregable."  *Charles v. U.S Dep't of Def.*, 979 F. Supp. 2d 35, 42 (D.D.C. 2013).  USDA has met its burden here because it has provided a detailed justification and not just conclusory statements.  *Id.*  A court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated for this reason.  *See Armstrong v. Exe. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).  The agency is not required to provide so much detail that the exempt material would be effectively disclosed.  *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

Here, the FBI's satisfaction of its segregability obligation is evidenced by the fact that the agency did not withhold any of the contested records in whole.  The FBI produced ten pages of records in full and produced another seventeen pages with sporadic excisions of exempted information.  *See* Seidel Decl. ¶¶ 72(a)-(b). The document productions illustrate the FBI's careful review of the records and determination that no further segregation of meaningful information would be possible without divulging the very information deserving protection.  Seidel Decl. ¶¶ 72(b).  The Court, therefore, should enter judgment in the FBI's favor on this issue.

## CONCLUSION

For the foregoing reasons and those elaborated in the Seidel Declaration and in camera declaration, the Court should grant the FBI's motion for summary judgment and enter judgment in the agency's favor.


Dated: August 18, 2020                    Respectfully submitted,


                                          MICHAEL R. SHERWIN
                                          Acting United States Attorney

                                          DANIEL F. VAN HORN
                                          D.C. BAR # 924092
                                          Chief, Civil Division

                              By:         _____//s//_____
                                          JOHN C. TRUONG
                                          D.C. BAR #465901
                                          Assistant United States Attorney
                                          555 4th Street, N.W.
                                          Washington, D.C. 20530
                                          Tel: (202) 252-2524
                                          Fax: (202) 252-2599
                                          E-mail: John.Truong@usdoj.gov
                                          Counsel for Defendant