UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LASSANA MAGASSA,

      Plaintiff,

         v.

FEDERAL BUREAU OF INVESTIGATION,

      Defendant.

Civil Action No. 1:19-cv-1952 (KBJ)

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)      I am currently the Section Chief ("SC") of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), Winchester, Virginia. I became the Acting Section Chief on May 26, 2020. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to May 2020; Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("PA") litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration ("DEA") from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIA/PA matters and served as agency counsel representing the DEA in FOIA/PA suits nationwide. I also served as a U.S.

1

Army Judge Advocate General's Corps Officer in various assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division where I oversaw FOIA/PA litigation for the U.S. Army. I am an attorney registered in the State of Ohio and the District of Columbia.

(2)     In my official capacity as Acting Section Chief of RIDS, I supervise approximately 235 FBI employees, supported by approximately 94 contractors, who staff a total of twelve (12) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. With regard to the FOIA Improvement Act of 2016 and the withheld information, I have determined it is reasonably foreseeable that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's Freedom of Information/Privacy Act ("FOIPA") request for records related to Lassana Magassa.

(4)      In response to Plaintiff's request, the FBI processed a total of 27 pages of responsive records subject to the FOIA.  Of these pages, the FBI released 10 pages in full and 17 pages in part.  In accordance with *Vaughn v. Rosen*, 424 F.2d 820 (D.C. Cir. 1973), this declaration is being submitted in support of Defendant's motion for summary judgment, and provides the Court with a summary of the administrative history of Plaintiff's request; the procedures used to search for, review, and process responsive records; and the FBI's justification for withholding information in part or in full pursuant to Privacy Act Exemptions (j)(2), (k)(2), (k)(5), (k)(6) and FOIA Exemptions 3, 6, 7(C), 7(E), 5 U.S.C. §§ 552(b)(3), (b)(6), (b)(7)(C), (b)(7)(E).

## BACKGROUND INFORMATION

(5)      Plaintiff Lassana Magassa is a U.S. citizen and resident of Seattle, Washington, who previously worked for Delta AirLines, Inc.

## ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST
## FBI FOIPA REQUEST NUMBER 1367694-000

(6)      By letter date February 14, 2017, Plaintiff submitted a FOIPA request to the FBI seeking records pertaining to Plaintiff.  Specifically, Plaintiff requested copies of all files, correspondence, or other records concerning himself.  Plaintiff provided a signed under the penalty of perjury statement.  **(Ex. A.)**

(7)      By letter dated February 24, 2017, the FBI acknowledged receipt of Plaintiff's FOIPA request, and notified Plaintiff it had assigned his request FBI FOIPA Request Number 1367694-000. Additionally, the FBI informed Plaintiff he could check the status his request and/or contact the FBI with any questions at www.fbi.gov/foia.  Furthermore, Plaintiff could appeal the FBI's response to the DOJ, Office of Information Policy ("OIP") within ninety (90) days of its letter, contact the FBI's FOIA public liaison, and or seek dispute resolution services

by contacting the Office of Government Information Services ("OGIS").  **(Ex. B.)**

By faxed letter on January 25, 2018, Plaintiff's Counsel submitted additional correspondence requesting the FBI take prompt action in response to his request.  **(Ex. C.)**

(8)     On February 1, 2018, the FBI notified Plaintiff's Counsel of the status of his request and advised he could accelerate the processing of his request by reducing its scope. The FBI further requested Plaintiff to indicate in writing if he would want to discuss reducing the scope of his request.  **(Ex. D.)**

(9)     By letter dated February 22, 2018, the FBI notified Plaintiff's Counsel it had reviewed 19 pages and was releasing 19 pages.  The FBI advised 19 pages of records were being released in full or in part, with certain information withheld pursuant to Privacy Act Exemptions (j)(2) and (k)(6) along with FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).  DOJ OIP further advised that, to the extent Plaintiff sought access to records that would either confirm or deny an individual's placement on any government watch list, the FBI properly refused to confirm or deny the existence of any such records because their existence is protected from disclosure pursuant to 5 U.S.C. § 552a (j)(2) and 5 U.S.C. § 552(b)(7)(E)The FBI also advised the documents represented the FBI's final release concerning his FOIPA request and were being provided at no charge.  **(Ex. E.**)

(10)     By letter dated May 22, 2018, Plaintiff's Counsel submitted an appeal to DOJ, Office of Information Policy ("OIP") challenging the FBI's search and withholding of information within its February 22, 2018, release response to FOIPA request 1367694-000.  **(Ex. F.)**

(11)     By letter executed on May 23, 2018, DOJ OIP acknowledged receipt of Plaintiff's appeal and assigned it number DOJ-AP-2018-005531.  **(Ex. G.)**

4

(12)    By letter dated November 20, 2018, DOJ OIP affirmed the FBI's action on

Plaintiff's FOIPA request.  DOJ OIP advised Plaintiff's Counsel that the FBI's action was

correct and that certain law enforcement records responsive to the Plaintiff's request are exempt

from the access provision of the Privacy Act and were properly withheld under the FOIA.  DOJ

OIP further advised that, to the extent Plaintiff sought access to records that would either confirm

or deny an individual's placement on any government watch list, the FBI properly refused to

confirm or deny the existence of any such records because their existence is protected from

disclosure pursuant to 5 U.S.C. § 552a (j)(2) and 5 U.S.C. § 552(b)(7)(E).  In addition, DOJ OIP

advised Plaintiff that the FBI had conducted an adequate, reasonable search for records in its

automated indices. Lastly, DOJ OIP advised Plaintiff of his right to file a lawsuit in the federal

district court if he was dissatisfied with its action on the appeal or seek mediation services by

contacting OGIS.  **(Ex. H.)**

(13)    On June 28, 2019, Plaintiff filed his complaint in the U.S. District Court for the

District of Columbia.  (ECF No. 1.)

(14)    Following a subsequent search for records which included not only main files but

also reference files, the FBI located additional records. By letter dated October 31, 2019, the

FBI notified Plaintiff it had reviewed 27 pages and was releasing 27 pages, Bates stamped

FBI(19-cv-1952)-1 through FBI(19-cv-1952)-27.[1]  The FBI advised Plaintiff that 27 pages of

records were being released in full or in part, with certain information withheld pursuant to

Privacy Act Exemptions (j)(2), (k)(2), (k)(5), and (k)(6) and FOIA Exemptions (b)(3), (b)(6),

(b)(7)(C), and (b)(7)(E).  The FBI also informed Plaintiff the documents represented the FBI's

---

[1] 19 pages were originally released in whole or in part to the Plaintiff on February 22, 2018.
Subsequently, FBI located 8 additional pages, Bates stamped FBI(19-cv-1952)-20 through
FBI(19-cv-1952)-27, which were then released either in whole or in part to Plaintiff.

5

final release concerning his FOIPA request and were being provided at no charge. **(Ex. I.)**

## THE FBI'S CENTRAL RECORDS SYSTEM

(15)     The Central Records System ("CRS") is an extensive system of records consisting

of applicant, investigative, intelligence, personnel, administrative, and general files compiled and

maintained by the FBI in the course of fulfilling its integrated missions and functions as a law

enforcement, counterterrorism, and intelligence agency to include performance of administrative

and personnel functions.  The CRS spans the entire FBI organization and encompasses the

records of FBI Headquarters ("FBIHQ"), FBI Field Offices, and FBI Legal Attaché Offices

("Legats") worldwide.

(16)     The CRS consists of a numerical sequence of files, called FBI "classifications,"

which are organized according to designated subject categories.  The broad array of CRS file

classification categories includes types of criminal conduct and investigations conducted by the

FBI, as well as categorical subjects pertaining to counterterrorism, intelligence,

counterintelligence, personnel, and administrative matters.  For identification and retrieval

purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number

("UCFN") consisting of three sequential components: (a) the CRS file classification number, (b)

the abbreviation of the FBI Office of Origin ("OO") initiating the file, and (c) the assigned

individual case file number for that particular subject matter.[2]  Within each case file, pertinent

documents of interest are "serialized," or assigned a document number in the order which the

document is added to the file, typically in chronological order.

---

[2]  For example, in a fictitious file number of "11Z-HQ-56789;" the "11Z" component indicates
the file classification, "HQ" indicates that FBI Headquarters is the FBI OO of the file, and
"56789"is the assigned case specific file number.

## THE CRS GENERAL INDICES AND INDEXING

(17)    The general indices to the CRS are the index or "key" to locating records within the enormous amount of information contained in the CRS.  The CRS is indexed in a manner which meets the FBI's investigative needs and priorities and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties.  The general indices are arranged in alphabetical order and comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval.  The entries in the general indices fall into two category types:

> A.  Main entry.  A main index entry is a created for each individual or non-individual that is the subject or focus of an investigation.  The main subject(s) are identified in the case title of most documents in a file.

> B.  Reference entry.  A reference index entry is created for individuals or non-individuals associated with the case but are not the main subject(s) or focus of an investigation.  Reference subjects are typically not identified in the case title of a file.

(18)    FBI employees may index information in the CRS by individual (persons), by organization (organizational entities, places, and things), and by event (*e.g.,* a terrorist attack or bank robbery).  Indexing information in the CRS is done at the discretion of FBI investigators when information is deemed of sufficient significance to warrant indexing for future retrieval.  Accordingly, the FBI does not index every individual name or other subject matter in the general indices.

7

## AUTOMATED CASE SUPPORT

(19)    Automated Case Support ("ACS") was an electronic, integrated case management system that became effective for FBIHQ and all FBI Field Offices and Legats on October 1, 1995. As part of the ACS implementation process, over 105 million CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices. ACS had an operational purpose and design to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its myriad missions and functions.[3]

(20)    The Universal Index ("UNI") was the automated index of the CRS and provided all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching. Individual names were recorded with applicable identifying information such as date of birth, race, sex, locality, Social Security Number, address, and/or date of an event. Moreover, ACS implementation built upon and incorporated prior automated FBI indices; therefore, a search employing the UNI application of ACS encompassed data that was already indexed into the prior automated systems superseded by ACS. As such, a UNI index search in ACS was capable of locating FBI records created before its 1995 FBI-wide implementation in both paper and electronic format.[4]

---

[3] ACS was and the next generation Sentinel system is relied upon by the FBI daily to fulfill essential functions such as conducting criminal, counterterrorism, and national security investigations; background investigations; citizenship and employment queries, and security screening, to include Presidential protection.

[4] Older CRS records that were not indexed into UNI as a result of the 1995 ACS consolidation remain searchable by manual review of index cards, known as the "manual indices."

## ACS AND SENTINEL

(21)    Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012. Sentinel provides a web-based interface to FBI users, and it includes the same automated applications that were utilized in ACS. After July 1, 2012, all FBI generated records are created electronically in case files via Sentinel; however, Sentinel did not replace ACS and its relevance as an important FBI search mechanism. Just as pertinent information was indexed into UNI for records generated in ACS before July 1, 2012, when a record is generated in Sentinel, information is indexed for future retrieval.

(22)    On August 1, 2018, the ACS case management system was de-commissioned and ACS data was migrated into Sentinel including the ACS indices data and digitized investigative records formerly available in ACS. Moreover, Sentinel retains the index search methodology and function whereby the CRS is queried via Sentinel for pertinent indexed main or reference entries in case files. All CRS index data from the UNI application previously searched via ACS is now searched through the "ACS Search" function within Sentinel.

(23)    Upon receipt of FOIPA requests where the subject matter predates the implementation of Sentinel, RIDS predominately begins its FOIPA searching efforts by conducting index searches via the "ACS Search" function in Sentinel. RIDS then builds on its ACS index search by conducting an index search of Sentinel records to ensure it captures all relevant data indexed after the implementation of Sentinel. The CRS automated indices, available within Sentinel and the ACS search function in Sentinel, in most cases represent the most reasonable means for the FBI to locate records potentially responsive to FOIPA requests. This is because these automated indices offer access to a comprehensive, agency-wide set of indexed data on a wide variety of investigative and administrative subjects. Currently, these

9

automated indices consist of millions of searchable records and are updated daily with material newly indexed in Sentinel.

(24)     Additionally, the location of records indexed to the subject of a FOIPA request does not automatically mean the indexed records are responsive to the subject. Index searches are the means by which potentially responsive records are located, but ultimately, a FOIPA analyst must consider potentially responsive indexed records against the specific parameters of individual requests. Responsiveness determinations are made once indexed records are gathered, analyzed, and sorted by FOIPA analysts who then make informed scoping decisions to determine the total pool of records responsive to an individual request.

## ADEQUACY OF SEARCH

(25)     Main and Reference Files. RIDS policy is to search for and identify only "main" files responsive to most FOIPA requests at the administrative stage; therefore, RIDS conducted an additional search of the CRS to locate any "reference" material potentially responsive to Plaintiff's request.

(26)     Index Searching. To locate CRS information, RIDS employs an index search methodology. Index searches of the CRS are reasonably expected to locate responsive material within the vast CRS since the FBI indexes pertinent information into the CRS to facilitate retrieval to serve its primary law enforcement and intelligence gathering functions. Given the broad range of indexed material in terms of both time frame and subject matter that it can locate in FBI files, the FBI automated indices available through Sentinel is the mechanism RIDS employs to conduct CRS index searches.

(27)     CRS Search and Results. In response to Plaintiff's request, RIDS conducted a CRS index search for potentially responsive records employing the Sentinel and ACS indices

10

available through Sentinel by using the following search term: "Lassana Magassa". The FBI's

search included a three-way phonetic breakdown of the term listed above. The FBI used

information in plaintiff's request letter to facilitate the identification of responsive records. As a

result of this search effort, the FBI identified two main files indexed to plaintiff's name; 67B-

HQ-1481219 and 67D-HQ-1561778. Upon learning of this litigation, the FBI conducted a

subsequent search for records. This new search of the CRS identified not only main files but

also reference files. The search yielded the same files that were initially identified at the

administrative stage and identified additional reference serials.

(28)   Scope of Search. RIDS conducted a search reasonably calculated to locate

records responsive to Plaintiff's request. First, given its comprehensive nature and scope, the

CRS is the principal records system searched by RIDS, to locate information responsive to most

FOIPA requests, because the CRS is where the FBI indexes information about individuals,

organizations, events, and other subjects of investigative interest for future retrieval. *See infra* ¶

16. Second, given Plaintiff's request seeks information about himself, such information would

reasonably be expected to be located in the CRS via the index search methodology.

## JUSTIFICATION FOR NON-DISCLOSURE PURSUANT TO THE PRIVACY ACT

### PRIVACY ACT EXEMPTION (k)(2)

(29)   Exemption (k)(2) of the Privacy Act exempts from mandatory disclosure

investigatory material compiled for law enforcement purposes, other than criminal. The records

responsive to Plaintiff's request pertain to investigatory matters compiled for law enforcement

purposes, other than criminal investigations. Specifically, these records pertain to Lassana

Magassa's pre-employment background investigation (FBI(19-cv-1952)-1 through FBI(19-cv-

1952)-19). It is one of the FBI's responsibilities and/or primary missions to investigate and

11

adjudicate such matters.  These investigatory records were retrieved by RIDS through a search of

the CRS, which is a system of records specifically exempted from the Privacy Act, 5 U.S.C. §

552a.  Accordingly, access to these records would be denied pursuant to the Privacy Act, 5

U.S.C. § 552a (k)(2), in conjunction with 28 C.F.R. § 16.96. However, these records were

processed under the access provisions of the Privacy Act and FOIA to achieve maximum

disclosure.

PRIVACY ACT EXEMPTION (k)(6)

(30)    Exemption (k)(6) of the Privacy Act exempts from mandatory disclosure testing

or examination material used to determine appointment or promotion of federal employees when

disclosure would compromise the objectivity or fairness of the testing or examination process.[5]

PRIVACY ACT EXEMPTION (j)(2)

(31)    When an individual requests records about themselves from the FBI, we first

consider the request under the Privacy Act, which generally provides individuals a right of

access to records about them maintained in government files, unless a Privacy Act exemption

applies.  *See* 5 U.S.C. § 552a.  One such exemption is Exemption (j)(2), which exempts from

mandatory disclosure systems of records "maintained by an agency or component thereof which

performs as its principal function any activity pertaining to the enforcement of criminal laws,

including police efforts to prevent, control, or reduce crime or to apprehend criminals . . . ."  5

U.S.C. § 552a(j)(2).  The FBI has exempted law enforcement investigative records maintained in

the CRS from the Privacy Act's disclosure requirements pursuant to (j)(2).  *See* 63 Fed. Reg.

8671, 8684 (1998).

---

[5] Exemption (k)(6) has been asserted on the following pages: FBI(19-cv-1952)-10, 15, and 16.

12

(32)     In response to Plaintiff's request, the FBI located responsive records which relate

to investigative matters that are part of the FBI's primary mission (Bates pages FBI(19-cv-1952)-

20 through FBI(19-cv-1952-27).The investigatory records at issue were retrieved by RIDS

through a search of the CRS, which is a system of records specifically exempt from the Privacy

Act, 5 U.S.C. § 552a.  Records responsive to the plaintiff's request were compiled as a result of

the FBI's fulfillment of its law enforcement duties.  Although access to the records responsive to

Plaintiff's request would be denied under the Privacy Act, RIDS chose to process these records

under the access provisions of the FOIA to achieve maximum disclosure.[6]

### JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

(33)     The FBI processed all documents responsive to Plaintiff's request to achieve

maximum disclosure consistent with the access provisions of the FOIA.  Every effort was made

to provide Plaintiff with all material in the public domain and with all reasonably segregable,

non-exempt information.  The FBI did not withhold any reasonably segregable, nonexempt

---

[6] The FBI inadvertently cited Privacy Act Exemption (k)(5) on the October 31, 2019 release
letter.  Exemption (k)(5) of the Privacy Act exempts from mandatory disclosure investigatory
material compiled solely for the purpose of determining suitability, eligibility, or qualifications
for Federal civilian employment or for access to classified information when the material comes
from confidential sources.  The pre-employment related information does not contain
information from confidential sources and therefore (k)(5) does not apply.  The FBI also asserted
Privacy Act Exemption (k)(6) on Bates pages FBI(19-cv-1952)-10, FBI(19-cv-1952)-15, and
FBI(19-cv-1952)-16.  Exemption (k)(6) of the Privacy Act exempts from mandatory disclosure
testing or examination material used to determine appointment or promotion of federal
employees when disclosure would compromise the objectivity or fairness of the testing or
examination process.  The FBI asserted Exemption (k)(6) to withhold information regarding Mr.
Magassa's SA Battery Test Results on Bates page FBI(19-cv-1952)-10, and Mr. Magassa's
Special Agent Phase I Scores on Bates pages FBI(19-cv-1952)-15 and FBI(19-cv-1952)-16.  The
information withheld pursuant to Exemption (k)(6) is also withheld pursuant to FOIA Exemption
(b)(7)(E).  Because the pre-employment records were fully denied under the Privacy Act
pursuant to Exemption (k)(2) and (j)(2), and processed pursuant to the FOIA for maximum
disclosure, the FBI will not further address withholding of the information pursuant to the
Privacy Act.  Instead, the FBI will discuss these withholdings in the context of the applicable
FOIA Exemptions.

portions from Plaintiff. Further description of the information withheld, beyond what is provided in this declaration, could identify the actual exempt information protected by the FBI. The FBI numbered all pages of its production consecutively as "(19-cv-1952)-1 through (19-cv-1952)-27". These numbers are located at the bottom of each page. Additionally, the FBI is including an index at **Exhibit J** to explain where within its productions of responsive records it released pages in part and its reasoning for doing so; and to explain on which pages it asserted various FOIA Exemptions.

(34) Additionally, on the Bates-numbered documents provided to Plaintiff, the FBI further categorized its application of Exemptions to better explain the nature of the information withheld pursuant to the provisions of the FOIA. Specifically, the FBI applied numerical codes that coincide with various categories of exempt information. These coded categories are provided to aid the Court's and Plaintiff's review of the FBI's explanations of the FOIA Exemptions it has asserted to withhold the material. The coded, Bates-numbered pages together with this declaration demonstrate that all material withheld by the FBI is exempt from disclosure pursuant to the cited FOIA exemptions or is so intertwined with protected material segregation is not possible without revealing the underlying protected material.

(35) Each instance of information withheld pursuant to a FOIA Exemption is accompanied by a coded designation that corresponds to the categories listed below. For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to FOIA Exemption 7(C) protecting against unwarranted invasions of personal privacy. The numerical designation of "1" following the "(b)(7)(C)" narrows the main category into a more specific subcategory, such as "Names and Identifying Information of FBI Special Agents/Professional Staff."

14

(36)    Listed below are the categories used to explain the FOIA Exemptions the FBI

asserted to withhold information:

| SUMMARY OF EXEMPTION JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Exemption 3** | **Information Protected by Statute** |
| (b)(3)-1 | National Security Act of 1947 [50 USC Section 3024(i)(1)] |
| **Exemptions 6 & 7(C)** | **Clearly Unwarranted Invasion of Personal Privacy and Unwarranted Invasion of Personal Privacy** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and Identifying Information of FBI Special Agents/Professional Staff |
| (b)(6)-2 and (b)(7)(C)-2 | Names and/or Identifying Information of Non-FBI Federal Government Employees |
| (b)(6)-3 and (b)(7)(C)-3 | Name and Identifying Information of a Third Party Merely Mentioned |
| **Exemption 7(E)** | **Investigative Techniques and Procedures** |
| (b)(7)(E)-1 | FBI Non-Public Web Addresses |
| (b)(7)(E)-2 | Collection and Analysis of Information |
| (b)(7)(E)-3 | Information Related to Polygraphs |
| (b)(7)(E)-4 | Sensitive Investigative File Numbers |
| (b)(7)(E)-5 | Identity of an FBI Squad and Unit |
| (b)(7)(E)-6 | Focus of Specific Investigation |
| (b)(7)(E)-7 | Types and Timing of Investigations |

## EXEMPTION 3 - INFORMATION PROTECTED BY STATUTE

(37)    5 U.S.C. § 552 (b)(3) exempts from disclosure information which is:

specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the
matters be withheld from the public in such a manner as to leave no discretion on the
issue; or (A)(ii) establishes particular criteria from withholding or refers to particular
types of matters to be withheld; and (B) if enacted after the date of enactment of the Open
FOIA Act of 2009, specifically cites to this paragraph.

NATIONAL SECURITY ACT OF 1947 [50 U.S.C. § 3024(I)(1)]

(38)    Exemption (b)(3) was asserted to withhold information pursuant to Section

102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence

Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. §3024(i)(1), which

provides that the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods." [7] As relevant to 5 U.S.C. § 552 (b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009.[8]  On its face, this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods.  Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute.  *See CIA v. Sims*, 471 U.S. 159 (1985).

(39)    To fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence.  50 U.S.C. § 3024(i)(2)(A), (B). Accordingly, the DNI has promulgated Intelligence Community Directive 700, providing that IC elements shall protect "national intelligence and intelligence sources, methods and activities from unauthorized disclosure."[9]  The FBI is one of 17 member agencies comprising the IC, and as such must protect intelligence sources and methods.

(40)    As relevant here, Exemption (b)(3) has been applied to exempt material in pages FBI(19-cv-1952)-20 through FBI(19-cv-1952)-25, where the protected information qualifies for protection as both an "intelligence source and method" under § 3024(i)(1) in conjunction with a law enforcement "technique," "procedure," or "guideline" under Exemption (b)(7)(E), as

---

[7]  Section 102A(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1).  As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1).

[8]  The OPEN FOIA Act of 2009 was enacted October 28, 2009, Pub.L. 111-83, 123 Stat. 2142, 2184, 5 U.S.C. § 552 (b)(3)(B).

[9]  Intelligence Community Directive (ICD) 700, 7 June 2012, ¶ 2a.

described below.  Due to the nature and function of the information, it must be withheld under §
3024(i)(1) in conjunction with Exemption (b)(7)(E), given its dual application in both
intelligence gathering and law enforcement settings as discussed herein.

(41)     Notably, § 3024(i)(1) makes no distinction between intelligence activities, sources
or methods classified per Executive Order 13526, Section 1.4(c) and the disclosure of source and
method information that is unclassified; the statute plainly prescribes that "intelligence sources
and methods" shall be protected from disclosure irrespective of classification.  In other words,
Congress specifically prohibited the disclosure of information pertaining to "intelligence sources
and methods" used by the IC as a whole.  Given the plain mandate to protect the IC's sources
and methods of gathering intelligence, the FBI has determined that intelligence sources and
methods would be revealed if the withheld information is disclosed to Plaintiff; therefore, the
FBI is prohibited from disclosing such information under § 3024(i)(1).

(42)     Although § 3024(i)(1) does not impose a requirement to articulate harm,
disclosure of this information presents a bona fide opportunity for individuals to develop and
implement countermeasures, resulting in the loss of significant intelligence information, sources,
and methods relied upon by national policymakers and the IC to safeguard national security.
Thus, this information in the records was properly withheld pursuant to Exemption 3, as
prescribed in 50 U.S.C. § 3024(i)(1), in conjunction with Exemption (b)(7)(E).

## EXEMPTION 7 THRESHOLD

(43)     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it
must first demonstrate that the records or information at issue were compiled for law
enforcement purposes.

(44)     Pursuant to 28 USC §§ 533, 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM") and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled for the following specific law enforcement purposes.

(45)     The pertinent records at issue here were compiled, created and/or shared in furtherance of the FBI's law enforcement, national security, and intelligence missions. As prescribed by AGG-DOM, the FBI may obtain information to detect, prevent, or protect against federal crimes, threats to national security, or to collect foreign intelligence. To accomplish these missions, operational functions are required, to include the identification of, development, and implementation of law enforcement and intelligence gathering methods, techniques, procedures, and/or guidelines. Thus, these records, on pages FBI(19-cv-1952)-1 through FBI(19-cv-1952-27, were compiled for a law enforcement purpose; they squarely fall within the law enforcement duties of the FBI; therefore, these records meet the threshold requirement and are covered by Exemption (b)(7).

## FOIA EXEMPTIONS (b)(6) AND (b)(7)(C)
## CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY AND
## UNWARRANTED INVASION OF PERSONAL PRIVACY

(46)     Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6.

(47)   Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[10]

(48)   When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information about an individual, their name, or their identifying information[11] would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In each instance wherein information was withheld pursuant to Exemptions 6 and

---

[10] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

[11] Hereafter, identifying information includes the following: dates of birth, places of birth, residences, telephone numbers, social security numbers, FBI numbers (singular, internal numbers assigned to investigative suspects), and/or singular professional titles.

7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.

### (b)(6)-1 AND (b)(7)(C)-1: NAMES AND IDENTIFYING INFORMATION OF FBI SPECIAL AGENTS/PROFESSIONAL STAFF

(49)    Within Exemption category (b)(6)-1 and (b)(7)(C)-1 on pages FBI(19-cv-1952)-4 and FBI(19-cv-1952)-19-27, the FBI protected the names and identifying information (FBI employee identification numbers, telephone number, and email address)of FBI Special Agents ("SAs") and professional staff.  These FBI SA's and professional staff were responsible for conducting, supervising, and/or maintaining the investigations/administrative activities related to Lassana Magassa, reflected in the documents responsive to Plaintiff's request.  These responsibilities included but are not limited to the following: coordinating/completing tasks in support of the FBI's investigative and administrative functions, compiling information, conducting interviews, and/or reporting on the status of the investigations.

(50)    Assignments of SAs to any particular investigation are not by choice.  Publicity, adverse or otherwise, arising from a particular investigation and/or use of specific FBI investigative techniques, may seriously prejudice their effectiveness in conducting other investigations or performing their day-to-day work.  The privacy consideration is also applied to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations/investigative activities, whether or not they are currently employed by the FBI.  FBI SAs conduct official inquiries into various criminal and national security violation cases.  The publicity associated with the release of an SA's identity in connection with a particular investigation/investigative activities could trigger hostility toward a particular SA.  During the course of an investigation, a SA may engage with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious

20

disturbances to people and their lives. Persons targeted by such investigations/investigative activities, and/or those sympathetic to those targeted, could seek to inflict violence on a SA based on their participation in an investigation/in the deployment of certain investigative techniques. This is because an individual targeted by such law enforcement actions may carry a grudge against those involved with the investigation, which may last for years. These individuals may seek revenge on SAs and other federal employees involved in a particular investigation/investigative activities. There is no public interest served by disclosing the SA's identities because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy; and the FBI properly withheld the names and identifying information of FBI SAs pursuant to Exemptions 6 and 7(C).

(51)    The FBI also withheld the names and identifying information of FBI professional staff pursuant to Exemptions 6 and 7(C). These FBI professional staff were assigned to handle tasks related to Plaintiff's pre-employment background investigation. Similar to FBI SAs, these FBI employees could be targeted for reprisal based on their involvement in specific investigations/investigative activities. Furthermore, these FBI professional staff were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. Thus, these individuals maintain substantial privacy interests in not having their identities disclosed. In contrast, the FBI concluded that no public interest would be served by disclosing the identities of these FBI professional staff to the general public because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Accordingly, after balancing these

21

profession staff employees' substantial privacy interests against the non-existent public interest, the FBI determined disclosure of their identities would constitute a clearly unwarranted invasion of their personal privacy. Therefore, the FBI properly withheld the names and identifying information of FBI professional staff pursuant to Exemptions 6 and 7(C).

### (b)(6)-2 AND (b)(7)(C)-2: NAMES AND/OR IDENTIFYING INFORMATION OF NON-FBI FEDERAL GOVERNMENT EMPLOYEES

(52)     In Category (b)(6)-2 and (b)(7)(C)-2, the FBI protected the names and identifying information of personnel from non-FBI, federal, government agencies who provided information to or otherwise assisted the FBI in its pre-employment background investigation of Lassana Magassa.[12]  The rationale for protecting the identities of other government employees is the same as the rationale for protecting the identities of FBI employees. *See* ¶¶ 49-51 *supra*.  Publicity, adverse or otherwise, concerning the assistance of these other agency employees in an FBI investigation/investigative activities would seriously impair their effectiveness in assisting or participating in future FBI investigations/investigative activities.  The privacy consideration also protects these individuals from unnecessary, unofficial questioning as to the FBI investigation.  It is possible for a person targeted by law enforcement action to carry a grudge which may last for years, and to seek revenge on the personnel involved in the investigation/investigative activities at issue in these FBI records.  The publicity associated with the release of their names and/or identifying information in connection with this investigation/investigative activities could trigger hostility towards them by such persons.  Therefore, these employees maintain substantial privacy interests in not having their identities disclosed in this context.  In contrast, there is no public interest to be served by the disclosure of these employees' names and/or identifying information

---

[12] Exemptions (b)(6) and (b)(7)-2 have been asserted on the following pages: FBI(19-cv-1952)-22, 23, and 24.

because their identities, by themselves, would not demonstrate how the FBI performed its statutory mission and thus, would not significantly increase the public's understanding of the FBI's operations and activities. Accordingly, the FBI properly protected these employees' privacy interests pursuant to FOIA Exemptions 6 and 7(C).

(b)(6)-3 AND (b)(7)(C)-3: NAMES AND IDENTIFYING INFORMATION OF A
THIRD PARTY MERELY MENTIONED

(53)    In Exemption category (b)(6)-3 and (b)(7)(C)-3, pages FBI(19-cv-1952)-22 through FBI(19-cv-1952)-23, the FBI protected the name and identifying information of a third party who was merely mentioned in the investigative records responsive to Plaintiff's request. The FBI has information about this third party in its files because this individual was tangentially mentioned in conjunction with FBI investigative efforts. This individual was not of investigative interest to the FBI. This third party maintains substantial and legitimate privacy interests in not having this information disclosed and thus, being connected with FBI law enforcement matters. Considering the FBI is an investigative and intelligence agency, disclosure of this third party's name and/or identifying information in connection with an FBI record carries an extremely negative connotation. Disclosure of their identity would subject this individual to possible harassment or criticism and focus derogatory inferences and suspicion on them. The FBI then considered whether there was any public interest that would override the privacy interest and concluded that disclosing information about an individual who was merely mentioned in an FBI investigative file would not significantly increase the public's understanding of the operations and activities of the FBI. Accordingly, the FBI properly protected this individuals' privacy interest pursuant to FOIA Exemptions 6 and 7(C).

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(54)    5 U.S.C. § 552(b)(7)(E) provides protection for:

> law enforcement records [which]…would disclose techniques and procedures for
> law enforcement investigations or prosecutions or would disclose guidelines for
> law enforcement investigations or prosecutions if such disclosure could
> reasonably be expected to risk circumvention of the law.

(55)    Exemption (b)(7)(E) has been asserted to protect information from these records,

the release of which would disclose techniques and/or procedures for law enforcement

investigations or prosecutions, or would disclose guidelines for law enforcement investigations

or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

(56)    Within the responsive documents, the FBI applied Exemption (b)(7)(E) to non-

public investigative techniques and procedures utilized by the FBI to pursue its law enforcement

mission.  In addition, the FBI determined an *in camera* declaration is the most appropriate way to

provide additional details about the FBI's withholding of non-public investigative information

pursuant to this exemption as the FBI cannot further describe the information publicly without

risking harms protected against by this exemption.  The FBI also applied Exemption (b)(7)(E) to

non-public details about techniques and procedures that are otherwise known to the public.

Specifically, the FBI asserted Exemption 7(E) to protect the following categories of information.

(b)(7)(E)-1: FBI NON-PUBLIC WEB ADDRESSES

(57)    In Exemption Category (b)(7)(E)-1, pages FBI(19-cv-1952)-1 through FBI(19-cv-

1952)-3, the FBI protected non-public FBI intranet addresses.  Releasing this information would

provide criminals with specific targets for possible cyber-attacks and/attacks on FBI secure

communications.  Considering the current cyber-security environment where government data

breaches and other hacking attempts on government systems are prevalent, it is likely that the

release of this type of information could provide hackers with avenues to exploit the FBI's

Information Technology system. It is possibly they could use this information to gain

unauthorized access to FBI systems, view and/or manipulate sensitive investigative data,

interfere with the FBI's non-public intranet protocol, and/or hinder the FBI's ability to enforce

the law by disrupting the FBI's internal communications. Releasing this information poses

substantial risks to FBI information systems, could potentially decrease the FBI's effectiveness,

and could enable criminals to circumvent the law. Accordingly, the FBI asserted Exemption

7(E) to withhold this information.

### (b)(7)(E)-2: COLLECTION AND ANALYSIS OF INFORMATION

(58)    In Exemption category (b)(7)(E)-2, pages FBI(19-cv-1952)-10, FBI(19-cv-1952)-

15, and FBI(19-cv-1952)-22, the FBI protected the methods the FBI uses to collect and analyze

information it obtains for investigative purposes. The release of this information would disclose

the identity of methods used in the collection and analysis of information, including how and

from where the FBI collects information and the methodologies employed to analyze it once

collected. Such disclosures would enable subjects of FBI investigations to circumvent similar

currently used techniques. The relative utility of these techniques could be diminished if the

actual techniques were released in this matter. This in turn would facilitate the accumulation of

information by investigative subjects regarding the circumstances under which the specific

techniques were used or requested and the usefulness of the information obtained. Release of

this type of information would enable criminals to educate themselves about the techniques

employed for the collection and analysis of information and therefore allow these individuals to

take countermeasures to circumvent the effectiveness of these techniques and to continue to

25

violate the law and engage in intelligence, terrorist, and criminal activities. Accordingly, the FBI has properly withheld this information pursuant to FOIA Exemption 7(E).

(b)(7)(E)-3: INFORMATION RELATED TO POLYGRAPHS

(59)    In Exemption category (b)(7)(E)-3, the FBI protected procedures and techniques used by FBI investigators to conduct polygraph examinations, to include detailed non-public information about the use of both pre-employment polygraphs.[13]  While the FBI's use of polygraph examinations is publicly known, the details of the FBI's methodology for conducting polygraphs is highly guarded information.  Disclosure of this information could enable individuals subject to polygraph examinations – including applicants, employees, and individuals involved in law enforcement investigations – to educate themselves about pre-employment and operational polygraph examinations and develop countermeasures to circumvent the effectiveness of the examinations.  Furthermore, revealing any details of how polygraphers administer polygraphs and interpret polygraph results would allow examinees an idea of how they might effectively deceive FBI polygraphers, and circumvent the law enforcement purpose of polygraph examinations.  In this manner, the relative benefit of polygraph examinations would be diminished by disclosure of the actual techniques and procedures employed by the FBI.  Thus, the FBI properly protected this information from disclosure pursuant to FOIA Exemption 7(E).

(b)(7)(E)-4: SENSITIVE INVESTIGATIVE FILE NUMBERS

(60)    In Exemption category (b)(7)(E)-4, pages FBI(19-cv-1952)-20 through FBI(19-cv-1952)-25, the FBI protected sensitive investigative file numbers.  The FBI determined this Exemption is appropriate for protecting these file numbers as the release of file numbering convention identifies the investigative interest or priority given to such matters.  The file

---

[13] Exemption (b)(7)(E)-3 has been asserted on the following page: FBI(19-cv-1952)-16

numbers the FBI protected are not known to the general public. These file numbers contain three separate portions. The first portions of these file numbers consist of FBI file classification numbers which indicate the types of investigative/intelligence gathering programs to which these files pertain. Many of the FBI's classification numbers are public, which makes disclosure of this information even more telling. Release of known file classification numbers in the context of investigative records would immediately reveal the types of investigations being pursued, and thus the types of investigative techniques and procedures available to FBI investigators, and/or non-public facets of the FBI's investigative strategies. Additionally, releasing non-public FBI file classification numbers would reveal critical information about non-public investigative techniques and procedures, and provide criminals and foreign adversaries the ability to discern the types of highly sensitive investigative strategies the FBI is pursuing whenever such file classification numbers are present within these and other sensitive FBI investigative records.

(61)     The protected investigative file numbers also contain two letter office of origination codes, indicating which FBI field office or overseas FBI legal attaché originated the investigations at issue. Providing this information, in many instances, would provide critical information about where and how the FBI detected particular criminal behaviors or national security threats, and reveal key pieces about the FBI's non-public FBI investigations or intelligence/evidence gathering sources and methods. Revealing this information could also risk disclosing unknown FBI investigations or intelligence gathering initiatives, by revealing interests in varying areas of FBI investigative responsibility. Releasing this information could also possibly provide significant information about the FBI's failure to detect certain types of criminal behavior. For example, a criminal operating out of San Francisco, California with ties to a criminal organization under investigation in the FBI's Seattle Field Office, could request the

FBI's Seattle Field Office's investigative file.  If the FBI were to reveal all of the originating office codes in the investigative files present in Seattle's file, and there was no indication the FBI ever pursued an investigation in San Francisco, the criminal could reasonably assume the FBI failed to locate any evidence of their wrongdoing, emboldening them to continue their activities, undeterred.

(62)    The third portion of these investigative files consists of the numbers given to the unique investigative initiatives these files were created to memorialize.  Releasing these singular file numbers would provide criminals and foreign adversaries with a tracking mechanism by which they can place particular files/investigations within the context of larger FBI investigative efforts.  Continued release of sensitive investigative file numbers would provide criminal with an idea of how FBI investigations may be interrelated and when, why, and how the FBI pursued different investigative strategies.  This would provide criminals with a means of judging where the FBI allocates its limited investigative resources, how the FBI responds to different investigative circumstances, what the FBI knows and when/how they obtained the knowledge, and if there are knowledge-gaps in the FBI's gathered intelligence.

(63)    In summary, repeatedly releasing sensitive FBI investigative file numbers would allow determined criminals and foreign adversaries to obtain an exceptional understanding of the body of investigative intelligence available to the FBI; and where, who, what and how it is investigating certain detected activities.  Release of this information would enable these criminals and foreign adversaries to predict FBI investigations and structure their behavior to avoid detection and disruption by FBI investigators, enabling them to circumvent the law. Accordingly, the FBI properly asserted FOIA Exemption 7(E) to protect this type of information.

(b)(7)(E)-5: IDENTITY OF AN FBI SQUAD AND UNIT

(64)    In Exemption category (b)(7)(E)-5, the FBI protected methods and techniques involving the location and identity of an FBI squad and unit involved in this investigation.[14] Such office locations and squads/units are usually found in the administrative headings of internal FBI documents.  These headings identify the locations of the office and squad/unit that originated or received the documents.  Disclosure of the location of these squads/units conducting the investigation would reveal the targets, the physical areas of interest of the investigation, and when taken together with the other locations if identified, could establish a pattern or "mosaic" that identification of a single location would not.  If the locations are clustered in a particular area, it would allow criminals to avoid those locations, especially if one or more locations appeared with frequency or in a pattern.  This would disrupt the method of the investigative process and deprive the FBI of valuable information.  The withholding of the specific squad/unit involved is justifiable as well under a similar rationale.  Once identified, the squads'/units' areas of expertise would become known and the target of the investigation would be able to discern the investigative strategies deployed by the FBI.  For example, knowing that a unit whose focus is on financial crimes is involved in an investigation is quite different information than knowing that the unit involved has a focus on crimes of violence.  This knowledge could allow a subject to employ countermeasures targeted toward concealing particular types of behavior and/or allow them to make informed decisions to avoid altogether certain activities in a particular location.  Furthermore, certain FBI squads and units are highly specialized, and are involved in deploying particular investigative techniques and procedures.

---

[14] Exemption (b)(7)(E)-5 has been asserted on the following pages: FBI(19-cv-1952)-20, 22, and 24.

Revealing their involvement in an investigation would reveal non-public details concerning which techniques and procedures were deployed in certain investigative circumstances, and subsequently allow for criminals to predict the FBI's use of these techniques and procedures in similar investigative circumstances. This would allow for them to discover and circumvent the deployment of these techniques and procedures, greatly reducing their effectiveness.

(65)     In summary, the FBI withheld the involvement of a particular squad and unit to prevent criminals from adjusting their behavior and activities to circumvent FBI law enforcement efforts. Accordingly, the FBI properly asserted Exemption 7(E) to withhold this information.

(b)(7)(E)-6: FOCUS OF SPECIFIC INVESTIGATION

(66)     In Exemption category (b)(7)(E)-6, the FBI protected the focus of a specific FBI investigation.[15] This focus has not been publicly disclosed. Revealing this information to investigative targets would alert them to the FBI's interest in their activities, allowing them to take active measures to conceal/destroy evidence or modify their behavior to avoid future investigative scrutiny.

(67)     Release of this type of information would also reveal key information about FBI intelligence gathering capabilities. Revealing when and why the FBI pursues or shifts investigative focuses would reveal key information about the types of investigative intelligence the FBI possessed at particular points in time, and possibly when and how such information was obtained. This could enable criminal elements/terrorists/foreign adversaries to discover non-public details about FBI intelligence/evidence gathering methods and help them determine how

---

[15] Exemption (b)(7)(E)-6 has been asserted on the following pages: FBI(19-cv-1952)-20, 22, 23, and 24.

they might modify their operational security to deprive the FBI of such critical intelligence/evidence.

(68)     In summary, releasing the focus of specific FBI investigations would allow targets of these investigations to thwart FBI efforts to investigative/disrupt their activities; stunt the FBI's broader strategies for pursuing interrelated investigations; provide key information about FBI investigative strategies for pursuing investigations; and reveal key information about the FBI's intelligence/evidence gathering capabilities. Therefore, as release of this information would enable criminals to circumvent the law, the FBI withheld this information pursuant to Exemption 7(E). In addition, the FBI is providing an *in camera* declaration to further describe the information protected by this exemption.

### (b)(7)(E)-7: TYPES AND TIMING OF INVESTIGATIONS

(69)     In Exemption category (b)(7)(E)-7, the FBI protected information pertaining to the types and dates of investigations referenced in the records at issue in this case.[16] Specifically, some of the information withheld, when referenced in connection with actual investigation and not in general discussion, pertains to the type of investigation, whether it is a "preliminary" or "full" investigation and the dates the FBI initiated the investigations. Disclosure of this information would inform criminals the types of activities that would trigger a full investigation as opposed to a preliminary investigation, and the particular dates the investigations cover. Additionally, this information would also give criminals valuable insight into how the FBI develops its investigations. Release of this information would allow investigative subjects to predict FBI investigative strategies and adjust their behavior accordingly. Moreover, revealing a

---

[16] Exemption (b)(7)(E)-7 has been asserted on the following pages: FBI(19-cv-1952)-20, 22, and 24.

specific activity in general warrants investigation could likewise cause individuals to adjust their conduct to avoid investigative scrutiny by the FBI.

(70)    Within this category, the FBI also protected the categorization of sensitive FBI investigations. The specific type of investigation pursued to investigate certain matters is often highly sensitive. This is because internal FBI policies establish which types of investigative techniques are authorized for use in certain types of investigations. Thus, revealing how investigations are categorized by FBI personnel would reveal the investigative "toolbox" available to the FBI in certain situations. Releasing these investigation types would allow criminals to predict the FBI's responses and investigative strategies when pursuing certain types of criminal behavior/national security threats. Such a release would enable criminals to stay one step ahead of FBI investigators and enable them to circumvent the law. Furthermore, revealing this information would also show the types of criminal behavior and/or intelligence discovered by the FBI that predicated the initiation of the particular investigation types. This could potentially reveal to criminals and national security threats key information about the FBI's intelligence sources and methods, and/or the FBI's capabilities to gather evidence of potential criminal activities through various investigative techniques. Disclosure could thus reveal key information about the FBI's investigative capabilities, allowing criminals to educate themselves on how they might avoid detection and/or disruption of their activities by FBI investigators.

(71)    In summary, disclosure of information related to the types and timing of investigations could enable criminals to time and structure their illegal activities accordingly to circumvent the FBI's attempts to enforce federal laws; therefore, the FBI has properly withheld this information pursuant to Exemption 7(E).

32

## SEGREGABILITY

(72)    As discussed in ¶ 4 *supra*, the FBI identified a total of 27 responsive pages:  10
Released in Full ("RIF") and 17 Released in Part ("RIP").  Each of these categories is discussed
below to further address segregability.

> a.  Pages RIF.  Following its segregability review, RIDS determined 10 pages could
> be released in full without redaction as there was no foreseeable harm to an
> interest protected by a Privacy Act or FOIA exemption.
>
> **b.** Pages RIP.  Following its segregability review, RIDS determined 17 pages could
> be released in part with redactions per the identified Privacy Act and FOIA
> exemptions herein. These pages comprise a mixture of material that could be
> segregated for release and material that was withheld as release would trigger
> foreseeable harm to one or more interests protected by the cited Privacy Act or
> FOIA exemptions on these pages.

## CONCLUSION

(73)    The FBI performed adequate and reasonable searches for responsive records;
processed all such records and released all reasonably segregable non-exempt information from
documents responsive to Plaintiff's FOIPA request that are subject to FOIA.  The FBI processed
the records under the access provisions of the Privacy Act and FOIA to achieve maximum
disclosure.  Information was properly withheld pursuant to Privacy Act Exemptions (j)(2), (k)(2),
and (k)(6) and FOIA Exemptions 3, 6, 7(C), and 7(E), 5 U.S.C. §§ 552 (b)(3), (b)(6), (b)(7)(C),
(b)(7)(E).  The FBI carefully examined the documents and determined the information withheld
from Plaintiff in this case, if disclosed would reveal statutorily protected information; would
cause a clearly unwarranted invasion of the personal privacy; or could reasonably be expected to

constitute an unwarranted invasion of personal privacy;  and/or would disclose techniques and procedures for law enforcement investigations.  After extensive review of the documents at issue, I have determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through J attached hereto are true and correct copies.

Executed this __17th__ day of August 2020.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

34

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LASSANA MAGASSA,

    Plaintiff,

      v.

FEDERAL BUREAU OF INVESTIGATION,

    Defendant.

Civil Action No. 19-CV-1952 (KBJ)

# **Exhibit A**

11500 PINEHURST WAY NE, 322
SEATTLE, WASHINGTON 98125

February 14, 2017

Federal Bureau of Investigation
Records/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

FREEDOM OF INFORMATION ACT / PRIVACY ACT REQUEST

Dear Sir or Madam:

This is a request for records under the provisions of the Freedom of Information Act and the Privacy Act.
Please process this request under both statutes to release the maximum number of records.

I request copies of all files, correspondence, or other records concerning myself. To assist you with this
search I am providing the following information about myself:

My full name: Lassana Magassa

Other names used: ▮▮▮▮▮▮▮▮▮▮▮▮▮

My date of birth: ___ ▮▮▮▮▮▮▮▮▮▮▮▮         FRCP 5.2

My place of birth: New York, New York

My Social Security number: ▮▮▮▮▮▮▮▮▮▮         FRCP 5.2

Please search both your automated indices and the older general (manual) indices, as well as all Field
Offices.

I authorize you to spend up to two hours searching for responsive records, but no more. This is an
individual request for research and study purposes, and I agree that I will pay up to $30 for fees, if
necessary. Please notify me in advance if fees are expected to exceed that amount. If the file is likely to
result in more than 250 pages, I would appreciate receiving a digital copy of the file on a CD-ROM rather
than in paper form.

If you have any questions, please call me at 2065520034.

Under penalty of perjury, I hereby declare that I am the person named above and I understand that any
falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.),
Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both;
and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions
of Title 5, U.S.C., Section 552a(i)(3) as a misdemeanor and by a fine of not more than $5,000.

Sincerely,

Lassana Magassa

FEB 24 2017

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LASSANA MAGASSA,

     Plaintiff,

        v.

FEDERAL BUREAU OF INVESTIGATION,

     Defendant.

Civil Action No. 19-CV-1952 (KBJ)

# **Exhibit B**



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

February 24, 2017

MR. LASSANA MAGASSA
11500 PINEHURST WAY NORTHEAST
322
SEATTLE, WA 98125

FOIPA Request No.: 1367694-000
Subject: MAGASSA, LASSANA

Dear Mr. Magassa:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI.

☑ Your request has been received at FBI Headquarters for processing.

☐ Your request has been received at the _____ Resident Agency / _____ Field Office and forwarded to FBI Headquarters for processing.

☐ The subject of your request is currently being processed for public release.  Documents will be released to you upon completion.

☐ Release of responsive records will be made to the FBI's FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☐ Your request for a fee waiver is being considered and you will be advised of the decision at a later date.  If your fee waiver is denied, you will be charged fees in accordance with the category designated below.

☑ For the purpose of assessing fees, we have made the following determination:

    ☐ As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

    ☐ As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

    ☑ As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.fbi.gov/foia by clicking on **FOIPA Status** and entering your FOIPA Request Number.  Status updates are adjusted weekly.  The status of newly assigned requests may not be available until the next weekly update.  If the FOIPA has been closed the notice will indicate that appropriate correspondence has been mailed to the address on file.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us."  The FOIPA Request number listed above has been assigned to your request.  Please use this number in all correspondence concerning your request.  Your patience is appreciated.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.  Your appeal must be postmarked or

electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@ic.fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LASSANA MAGASSA,

    Plaintiff,

      v.

FEDERAL BUREAU OF INVESTIGATION,

    Defendant.

Civil Action No. 19-CV-1952 (KBJ)

# **Exhibit C**

# FAX COVER SHEET

| TO | |
|---|---|
| **COMPANY** | |
| **FAX NUMBER** | 15408684997 |
| **FROM** | CLCMA STAFF |
| **DATE** | 2018-01-25 21:49:48 GMT |
| **RE** | Lassana Magassa | Correspondence re FOIPA Ref. No. 1367694- |
| **000** | |

## COVER MESSAGE

Enclosed please find correspondence regarding our request on behalf of our client, Mr. Lassana Magassa, for prompt action as to his FOIA/PA request, which is referenced under **1367694-000**.

Please contact the undersigned with any questions or further instructions in this regard. Thank you.

Sincerely,
Christina Jump and Charles Swift
Counsel for Lassana Magassa

*Christina A. Jump*

Civil Litigation Department Head
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507 (main)
(972) 914-2508 (direct)

**JAN 31** 2018



CONSTITUTIONAL LAW CENTER
*for* MUSLIMS *in* AMERICA

David M. Hardy, Section Chief
Record/Information Dissemination Section (RIDS)
Records Management Division
Federal Bureau of Investigation
170 Marcel Drive
Winchester, VA 22602-4483
Phone: (540) 868-4593
*Sent Via eFax:* (540) 868-4391; (540) 868-4997
**Sent Via Email:** foiparequest@ic.fbi.gov

January 25, 2018

**RE: FOIPA REFERENCE NUMBER 1367694-000**

To RIDS Section Chief, David M. Hardy:

This correspondence is made on behalf of our client, Mr. Lassana Magassa. For your reference, enclosed are a completed Affirmation/Declaration and a completed DHS 590 form.

Pursuant to the Freedom of Information Act, 5 U.S.C. § 522 (FOIA), and the Privacy Act, 5 U.S.C. § 522a, Mr. Magassa made a FOIA/Privacy act request in February 2017 for information on himself. On February 24, 2017, you sent an acknowledgement of receipt, which stated that Mr. Magassa's request was received at the FBI Headquarters for processing.

Nearly one year has passed since Mr. Magassa's FOIA/PA request, as well as nearly a year since Mr. Magassa received *any* correspondence from the FBI regarding his FOIA/PA request. The failure of the FBI to supply a response which either provides the requested documents, or cites applicable laws prohibiting the agency from doing so, is far beyond the twenty-day statutory period in which federal agencies are required to respond to FOIA requests.[1]

Furthermore, the FBI failed to provide notice specifying that "unusual circumstances" existed, which is necessary if exceeding the statutory period of twenty days, and also failed to state that an extension was needed.[2] Even if the FBI sent correspondence regarding the existence of unusual circumstances warranting an extension, and notice of its expected completion date, which it did not, the extension was not to exceed **ten days** unless the agency provided the requester the ability to either limit the scope of the request or arrange an alternative time frame.

---

[1] *See* 5 U.S.C. § 552(a)(6)(A).
[2] *See* 5 U.S.C. § 552(a)(6)(B)(i).

This year-long delay has resulted in great harm to Mr. Magassa. **We request a response that either provides documents, or cites applicable exemptions for not doing so, on Mr. Magassa's behalf, or we will file a mandamus action to obtain proper adjudication.**

In keeping with the spirit of FOIA, with its "strong presumption in favor of disclosure,"[3] if Mr. Magassa's request is denied in whole or in part, please provide sufficient justification for all withholdings by reference to specific exemptions of FOIA along with explanations as to the exemption's applicability to this case.[4] Please provide all segregable portions of otherwise exempt material. I reserve the right to appeal a decision to withhold any information.

Please send all records, as they become available, to this address:

>   The Constitutional Law Center for Muslims in America (CLCMA)
>   833 E. Arapaho Rd
>   Suite 102
>   Richardson, TX 75081

We trust that this provides you with all that is needed at this time. Thank you in advance for your time and attention to this matter. Please feel free to contact the undersigned with any questions in this regard.

Sincerely,

*Christina A. Jump*
Christina Jump, Esq.
Charles D. Swift, Esq.
Constitutional Law Center for Muslims in America (CLCMA)
972-914-2507
cjump@clcma.org
www.clcma.org

---

[3] *ACLU v. U.S. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)).
[4] The responding agency "bears the burden of proving the applicability of claimed exemptions." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 132 (D.C. Cir. 2013) (quoting *Am. Civil Liberties Union v. U.S. Dep't of Def. ("ACLU/DOD")*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LASSANA MAGASSA,

     Plaintiff,

        v.

FEDERAL BUREAU OF INVESTIGATION,

     Defendant.

Civil Action No. 19-CV-1952 (KBJ)

# **Exhibit D**



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

February 1, 2018

MS. CHRISTINA A. JUMP, ESQ.
CIVIL LITIGATION DEPARTMENT HEAD
CONSTITUTIONAL LAW CENTER FOR MUSLIMS IN AMERICA
833 EAST ARAPAHO ROAD
SUITE 102
RICHARDSON, TX 75081

FOIPA Request No.: 1367694-000
Subject: MAGASSA, LASSANA

Dear Ms. Jump:

The purpose of this letter is to advise you of the status of your pending Freedom of Information/Privacy Acts (FOIPA) request at the Federal Bureau of Investigation (FBI). Currently, your request is in the "perfected backlog", where your request is waiting assignment to an analyst.

You have the opportunity to reduce the scope of your request; this will accelerate the process and could potentially place your request in a smaller processing queue. This may also reduce search and duplication costs and allow for a more timely receipt of your information.

Please advise in writing if you would like to discuss reducing the scope of your request. Provide a telephone number, if one is available, where you can be reached between 8:00 a.m. and 5:00 p.m., Eastern Standard Time. Mail your response to: **Work Process Unit; Record Information/Dissemination Section; Records Management Division; Federal Bureau of Investigation; 170 Marcel Drive; Winchester, VA 22602**. You may also fax your response to: 540-868-4997, Attention: Work Process Unit.

For questions, or to check the status of your request, visit the www.fbi.gov/foia website. The FOIPA Request Number listed above has been assigned to your request. Please use this number in all correspondence concerning your request. Your patience is appreciated.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Records Management Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LASSANA MAGASSA,

    Plaintiff,

      v.

FEDERAL BUREAU OF INVESTIGATION,

    Defendant.

Civil Action No. 19-CV-1952 (KBJ)

# **Exhibit E**



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

February 22, 2018

CHRISTINA A. JUMP, ESQ.
THE CONSTITUTIONAL LAW CENTER FOR MUSLIMS IN AMERICA
SUITE 102
833 EAST ARAPAHO ROAD
RICHARDSON, TX   75081

FOIPA Request No.: 1367694-000
Subject: MAGASSA, LASSANA

Dear Mr. Magassa:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.   Below you will find check boxes under the appropriate statute headings which indicate the types of exemptions asserted to protect information which is exempt from disclosure.   The appropriate exemptions are noted on the enclosed pages next to redacted information.   In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely and identify which exemptions were applied.   The checked exemptions boxes used to withhold information are further explained in the enclosed Explanation of Exemptions.

|     | **Section 552** |     |     | **Section 552a** |
| --- | --- | --- | --- | --- |
| ☐ (b)(1) | | ☐ (b)(7)(A) | | ☐ (d)(5) |
| ☐ (b)(2) | | ☐ (b)(7)(B) | | ☑ (j)(2) |
| ☐ (b)(3) | | ☑ (b)(7)(C) | | ☐ (k)(1) |
| _____ | | ☐ (b)(7)(D) | | ☐ (k)(2) |
| _____ | | ☑ (b)(7)(E) | | ☐ (k)(3) |
| _____ | | ☐ (b)(7)(F) | | ☐ (k)(4) |
| ☐ (b)(4) | | ☐ (b)(8) | | ☐ (k)(5) |
| ☐ (b)(5) | | ☐ (b)(9) | | ☑ (k)(6) |
| ☑ (b)(6) | | | | ☐ (k)(7) |

19 pages were reviewed and 19 pages are being released.

Below you will also find additional informational paragraphs about your request.   Where applicable, check boxes are used to provide you with more information about the processing of your request.   Please read each item carefully.

☐   Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

    ☐   This information has been referred to the OGA(s) for review and direct response to you.
    ☐   We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

☑   In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the Freedom of Information Act (FOIA). See 5 U.S.C. § 552(c) (2006 & Supp. IV (2010). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request Number listed above has been assigned to your request. Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following website: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov. Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

☐   The enclosed material is from the main investigative file(s), meaning the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown such additional references, if identified to the same subject of the main investigative file, usually contain information similar to the information processed in the main file(s). As such, we have given priority to processing only the main investigative file(s) given our significant backlog. If you would like to receive any references to the subject(s) of your request, please submit a separate request for the reference material in writing. The references will be reviewed at a later date, as time and resources permit.

☑   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

The enclosed documents represent the final release of information responsive to your FOIA request. This material is being provided to you at no charge.

The enclosed material contains information regarding third parties. Third party information is not subject to access under the Privacy Act, 552(a)(b). Accordingly, your access rights are limited to those provided by the Freedom of Information Act. This material was withheld from you pursuant to 552 (b)(6)/(b)(7)(C), which pertains to material in which the release would constitute an unwarranted invasion of the personal privacy of third parties. This material is not appropriate for discretionary release.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal  privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,  or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service he release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LASSANA MAGASSA,

     Plaintiff,

       v.

FEDERAL BUREAU OF INVESTIGATION,

     Defendant.

Civil Action No. 19-CV-1952 (KBJ)

# **Exhibit F**



CONSTITUTIONAL LAW CENTER
*for* MUSLIMS *in* AMERICA

Melanie Ann Pustay, Director
Office of Information Policy (OIP)
United States Department of Justice
1524 New York Ave., NW
Suite 11050
Washington, D.C. 20530-0001
**Sent via email:** Melanie.a.pustay@usdoj.gov ; DOJ.OIP.FOIA@usdoj.gov
**Sent via e-fax:** (202) 514-1009

May 22, 2018

### RE: FREEDOM OF INFORMATION ACT APPEAL
### FOIPA REQUEST NO.: 1367694-000 (LASSANA MAGASSA)

Dear OIP Director Melanie Pustay,

By way of this letter, we submit the timely written appeal of the FBI's over-redacted and
inadequate response as to our client, Lassana Magassa's request under the Freedom of
Information Act, 5 U.S.C. § 522 (FOIA), and the Privacy Act, 5 U.S.C. § 522a (reference no.
1367694-000).

As a reminder, Mr. Magassa made a FOIA/Privacy Act request in February 2017 for information
regarding himself. On February 24, 2017, the FBI acknowledged receipt of Mr. Magassa's
request. In January 2018, the undersigned wrote Record/Information Dissemination Section
Chief David Hardy stating that, at that time, nearly one year passed since Mr. Magassa submitted
his request without a substantive response from the FBI. On February 22, 2018, a year after Mr.
Magassa initiated this process, the FBI provided a response with only a few documents. In this
response, the agency wrongfully redacted information by citing exemptions that do not protect
the redacted information on those documents from disclosure, or otherwise cited exemptions
without adequately explaining their application. In addition, upon information and belief, the
agency also withheld numerous documents in its possession, and did not properly address
withholding those documents and, further, did not cite their corresponding exemptions.

Redactions within the documents the FBI provided wrongfully cite exemptions (b)(6) and
(b)(7)(c) in relation to personnel files, and the personal privacy concerns of FBI personnel.
However, an FBI agent's employment with the government is public information, and these
employees have no legitimate privacy right to the deletion (or redaction) of their names.[1] In that
respect, unless the FBI makes a showing that disclosure of an agent's identity would endanger

---

[1] *See Ferguson v. Kelley,* 448. F. Supp. 919, 923 (N. D. Ill. 1977).

his or her safety, the FBI must not redact the names of FBI personnel.[2] The FBI has not met this burden, and we appeal the redaction of this information.

In addition, we further appeal the agency's citation of exemption (j)(2) on multiple documents relating to Mr. Magassa's application to the 2017 Honors Internship Program. Without more information from the FBI, which the agency is obligated to provide when citing such an exemption, the undersigned fails to see how an application to the internship program would constitute "material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce or apprehend criminals."[3] The FBI must at least state why this exemption applies if it is going to rely on it.

Lastly, we appeal the agency's lack of production in response to Mr. Magassa's request overall, as the response does not include *any* documents from Mr. Magassa's various interviews and/or interactions with FBI personnel, including but not limited to interactions with Special Agent Minh Tri Truong. The response also does not contain any communications with Mr. Magassa and other FBI personnel. In keeping with the spirit of FOIA, with its "strong presumption in favor of disclosure,"[4] if documents pertaining to Mr. Magassa's request are denied in whole or in part, the FBI must provide sufficient justification for all withholdings by reference to specific exemptions of FOIA, along with explanations as to the exemption's applicability to this case.[5] The FBI is also required to provide all segregable portions of otherwise exempt material. For the documents that are almost certain to exist which pertain to Mr. Magassa's interviews and communications with FBI personnel, the agency has not met this burden.

We request prompt review of this appeal and release of all responsive records. Please send all records, as they become available, to the undersigned to this address:

> The Constitutional Law Center for Muslims in America (CLCMA)
> 833 E. Arapaho Rd
> Suite 102
> Richardson, TX 75081

I look forward to receiving your timely response within the statutory period of 20 days. Thank you for your assistance.

Sincerely,

*Christina A. Jump*

Christina Jump, Esq.
Charles D. Swift, Esq.

---

[2] *See Id.*

[3] Title 5, U.S.C., Section 552 (j)(2)

[4] *ACLU v. U.S. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)).

[5] The responding agency "bears the burden of proving the applicability of claimed exemptions." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 132 (D.C. Cir. 2013) (quoting *Am. Civil Liberties Union v. U.S. Dep't of Def. ("ACLU/DOD")*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LASSANA MAGASSA, | |
| Plaintiff, | |
| v. | Civil Action No. 19-CV-1952 (KBJ) |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |

# Exhibit G

1425 New York Avenue N.W.
Suite 11050
Washington, DC 20005

Christina Jump, Esq.
CLCMA
Suite 102
833 E. Arapaho Road
Richardson, TX 75081

May 23, 2018

Dear Christina Jump, Esq.,

This is to advise you that your administrative appeal from the action of the FBI regarding Request No. 1367694 was received by the Office of Information Policy (OIP) of the U.S. Department of Justice on 05/22/2018.

OIP has the responsibility of adjudicating such appeals. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number DOJ-AP-2018-005531. Please mention this number in any future correspondence to this Office regarding this matter. Please note that if you provide an e-mail address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

We will notify you of the decision on your appeal as soon as we can. If you have any questions about the status of your appeal, you may contact me at (202) 514-3642. If you have submitted your appeal through FOIAonline, you may also obtain an update on the status of your appeal by logging into your account.

Sincerely,

**PRISCILLA JONES**

Priscilla Jones

Digitally signed by
PRISCILLA JONES
Date: 2018.05.23 08:54:35
-04'00'

Supervisory Administrative Specialist

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LASSANA MAGASSA,

    Plaintiff,

       v.

FEDERAL BUREAU OF INVESTIGATION,

    Defendant.

Civil Action No. 19-CV-1952 (KBJ)

# Exhibit H



**U.S. Department of Justice**

Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Christina Jump, Esq.
CLCMA
Suite 102                                    Re:    Appeal No. DOJ-AP-2018-005531
833 East Arapaho Road                               Request No. 1367694
Richardson, TX 75081                                CDT:RNB

**VIA: U.S. Mail**

Dear Ms. Jump:

     You appealed on behalf of your client, Lassana Magassa, from the action of the Federal Bureau of Investigation on his Freedom of Information Act request for access to records concerning himself. I note that your appeal concerns the withholdings made by the FBI and the adequacy of the FBI's search.

     After carefully considering your appeal, I am affirming the FBI's action on your client's request. The FOIA provides for disclosure of many agency records. At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities. In order to provide your client with the greatest possible access to responsive records, your client's request was reviewed under both the Privacy Act of 1974 and the FOIA. I have determined that certain law enforcement records responsive to your client's request are exempt from the access provision of the Privacy Act. See 5 U.S.C. § 552a(j)(2); see also 28 C.F.R. § 16.96 (2018). This information was also properly withheld under the FOIA because it is protected from disclosure pursuant to 5 U.S.C. § 552(b)(7)(E), which concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions.

     Additionally, certain information was properly withheld from you because it is exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(k)(6). See 28 C.F.R. § 16.96 (2018). This provision concerns testing or examination material used solely to determine individual qualification for appointment or promotion in the Federal service, the release of which would compromise the objectivity or fairness of the testing or examination process. This information was also properly withheld under the FOIA because it is protected from disclosure pursuant to 5 U.S.C. § 552(b)(7)(E), which concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions.

- 2 -

Further, certain information withheld from you consists of information regarding FBI third parties that does not pertain to your client. Such information is not subject to access under the Privacy Act. See, e.g., Sussman v. USMS, 494 F.3d 1106, 1121 n. 9 (D.C. Cir. 2007). Accordingly, your client's access rights are limited to those provided by the FOIA. The FBI properly withheld this information because it is protected from disclosure under the FOIA pursuant to:

> 5 U.S.C. § 552(b)(6), which concerns material the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties; and

> 5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

Additionally, it is reasonably foreseeable that disclosure of this information would harm the interests protected by these provisions.

To the extent that your request seeks access to records that would either confirm or deny an individual's placement on any government watch list, the FBI properly refused to confirm or deny the existence of any such records because their existence is protected from disclosure pursuant to 5 U.S.C. § 552a(j)(2) & 5 U.S.C. § 552(b)(7)(E). Exemption 7(E) concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures or guidelines for law enforcement investigations or prosecutions. Further, it is reasonably foreseeable that confirming or denying an individual's placement on any government watch list would harm the interests protected by this exemption. See, e.g., Kalu v. IRS, 159 F. Supp. 3d 16, 23 (D.D.C. 2016). This response should not be taken as an indication that records do or do not exist. Rather, this is the standard response made by the FBI.

As to your appeal concerning the adequacy of the FBI's search for responsive records subject to the FOIA, I note that the FBI conducted searches for responsive records in its automated indices. Accordingly, I have determined that the FBI's response was correct and that it conducted an adequate, reasonable search for such records.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your client's underlying request, and the action of the FBI in response to your client's request.

If your client is dissatisfied with my action on your appeal, the FOIA permits him to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your client's right to

- 3 -

pursue litigation. The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.  If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal.  Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

Sincerely,

11/20/2018

X

Sean R. O'Neill
Chief, Administrative Appeals Staff
Signed by: OIP

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LASSANA MAGASSA,

     Plaintiff,

        v.

FEDERAL BUREAU OF INVESTIGATION,

     Defendant.

Civil Action No. 19-CV-1952 (KBJ)

# <u>Exhibit I</u>



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

October 31, 2019

Mr. Charles D. Swift
Constitutional Law Center for Muslims in America
Suite 102
833 East Arapaho Road
Richardson, TX 75081

*Magassa v. DOJ*
Civil Action No. 1:19-cv-1952
FOIPA Request No.: 1367694-000
Subject: MAGASSA, LASSANA

Dear Mr. Swift:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Below you will find checked boxes under applicable statutes for the exemptions asserted to protect information exempt from disclosure. The appropriate exemptions are noted on the processed pages next to redacted information. An Explanation of Exemptions is enclosed to further explain justification for withheld information.

| **Section 552** | | **Section 552a** |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☑ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| 50 U.S.C., Section 3024 (i)(1) | ☐ (b)(7)(D) | ☑ (k)(2) |
| | ☑ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☑ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☑ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

27 pages were reviewed and 27 pages are being released.

Please see the paragraphs below for relevant information specific to your request and the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐ This information has been referred to the OGA(s) for review and direct response to you.
☐ We are consulting with another agency. The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records on individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, D.C. 20001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following website: https://www.foiaonline.gov/foiaonline/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter.   Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

☑ See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Information Management Division

Enclosures

In response to your Freedom of Information Privacy Act (FOIPA) request and subsequent civil action case pending in the U.S. District Court for the District of Columbia, enclosed are documents Bates numbered FBI (19-cv-1952)-1 to FBI (19-cv-1952)-27.

The enclosed documents represent the FBI's final release of information responsive to your request and civil action.

The enclosed documents responsive to your request are exempt from disclosure in their entirety pursuant to the Privacy Act, Title 5, United States Code, Section 552a, subsection (j)(2).   However, these records have been processed pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, thereby affording you the greatest degree of access authorized by both laws.

Portions of the enclosed documents responsive to your request are exempt from disclosure pursuant to the Privacy Act, Title 5, United States Code, Section 552a, subsection (k)(2) and (k)(5).   Additionally, the records have been processed pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, thereby affording you the greatest degree of access authorized by both laws.

The enclosed material contains information regarding third parties. Third party information is not subject to access under the Privacy Act, 552a(b).   Accordingly, your access rights are limited to those provided by the Freedom of Information Act.   This material was withheld from you pursuant to 552 (b)(6)/(b)(7)(C), which pertains to material in which the release would constitute an unwarranted invasion of the personal privacy of third parties. This material is not appropriate for discretionary release.

This material is being provided to you at no charge.

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum includes information applicable to your request.  Part 1 of the Addendum includes standard responses that apply to all requests.  Part 2 includes additional standard responses that apply to all requests for records on individuals.  Part 3 includes general information about FBI records.  For questions regarding Parts 1, 2, or 3, visit the www.fbi.gov/foia website under "Contact Us."  Previously mentioned appeal and dispute resolution services are also available at the web address.

**Part 1: The standard responses below apply to all requests:**

(i)      **5 U.S.C. § 552(c).**  Congress excluded three categories of law enforcement and national security records from the requirements of the FOIA [5 U.S.C. § 552(c) (2006 & Supp. IV (2010)].  FBI responses are limited to those records subject to the requirements of the FOIA.  Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)     **National Security/Intelligence Records.**  The FBI can neither confirm nor deny the existence of national security and foreign intelligence records pursuant to FOIA exemptions (b)(1), (b)(3), and PA exemption (j)(2) as applicable to requests for records about individuals [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2); 50 U.S.C § 3024(i)(1)].  The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].  This is a standard response and should not be read to indicate that national security or foreign intelligence records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)      **Requests for Records about any Individual—Watch Lists.**  The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].  This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)     **Requests for Records for Incarcerated Individuals.**  The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].  This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)      **Record Searches.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching those systems or locations where responsive records would reasonably be found.  A reasonable search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling law enforcement, intelligence, and administrative functions.  The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters (FBIHQ), FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide and includes Electronic Surveillance (ELSUR) records.  For additional information about our record searches visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii)     **FBI Records.**  Founded in 1908, the FBI carries out a dual law enforcement and national security mission.  As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)    **Requests for Criminal History Records or Rap Sheets.**  The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheets.  These criminal history records are not the same as material in an investigative "FBI file."  An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.  For a fee, individuals can request a copy of their Identity History Summary Check.  Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.  Additionally, requests can be submitted electronically at www.edo.cjis.gov.  For additional information, please contact CJIS directly at (304) 625-5590.

(iv)    **The National Name Check Program (NNCP).**  The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.  Please be advised that this is a service provided to other federal agencies.  Private citizens cannot request a name check.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal  privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LASSANA MAGASSA,

    Plaintiff,

      v.

FEDERAL BUREAU OF INVESTIGATION,

    Defendant.

Civil Action No. 19-CV-1952 (KBJ)

# **<u>Exhibit J</u>**

*LASSANA MAGASSA v. FBI*
19-cv-1952
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

## *Vaughn* Index

| SUMMARY OF FOIA EXEMPTION JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **EXEMPTION (b)(3)** | **INFORMATION PROTECTED BY STATUE** |
| (b)(3)-1 | National Security Act of 1947 [50 USC Section 3024(i)(1)] |
| **EXEMPTION (b)(6) and EXEMPTION (b)(7)(C)** | **CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and Identifying Information of FBI Special Agents/Professional Staff |
| (b)(6)-2 and (b)(7)(C)-2 | Name and/or Identifying Information of Non-FBI Federal Government Employees |
| (b)(6)-3 and (b)(7)(C)-3 | Name and Identifying Information of a Third Party Merely Mentioned |
| **EXEMPTION (b)(7)(E)** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| (b)(7)(E)-1 | FBI Non-Public Web Addresses |
| (b)(7)(E)-2 | Collection and Analysis of Information |
| (b)(7)(E)-3 | Information Related to Polygraphs |
| (b)(7)(E)-4 | Sensitive Investigative File Numbers |
| (b)(7)(E)-5 | Identity of an FBI Squad and Unit |
| (b)(7)(E)-6 | Focus of Specific Investigation |
| (b)(7)(E)-7 | Types and Timing of Investigations |

**INDEX KEY**

RIF: Released in Full
RIP: Released in Part

| Document Description | Bates | b3 | 6/7C1 | 6/7C2 | 6/7C3 | 7E1 | 7E2 | 7E3 | 7E4 | 7E5 | 7E6 | 7E7 | 7E8 | RIF | RIP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sentinel printout dated February 1, 2018, of Serial 1 of Lassana Magassa's Employee Personnel File | 1 | | | | | x | | | | | | | | | x |
| Sentinel printout dated February 1, 2018, of Serial 2 of Lassana Magassa's Employee Personnel File | 2 | | | | | x | | | | | | | | | x |
| | 3 | | | | | x | | | | | | | | | x |
| Bureau Personnel Management System ("BPMS") Printout, Dated January 31, 2018, of Personal Detail for Lassana Magassa | 4 | | x | | | | | | | | | | | | x |
| | 5 | | | | | | | | | | | x | | | |
| | 6 | | | | | | | | | | | x | | | |
| | 7 | | | | | | | | | | | x | | | |
| | 8 | | | | | | | | | | | x | | | |
| | 9 | | | | | | | | | | | x | | | |
| BPMS Printout, Dated January 31, 2018 of Status Screen for Lassana Magassa | 10 | | | | | | x | | | | | | | | x |
| | 11 | | | | | | | | | | | x | | x | |
| | 12 | | | | | | | | | | | x | | x | |
| | 13 | | x | | | | | | | | | | | | x |
| BPMS Printout, Dated January 31, 2018, of Test Scores for Lassana Magassa | 14 | | | | | | | | | | | x | | | |
| BPMS Printout, Dated January 31, 2018, of Phase I Scores for Lassana Magassa | 15 | | | | | | x | | | | | | | | x |
| BPMS Printout Dated January 31, 2018, of Polygraph Results for Lassana Magassa | 16 | | | | | | | x | | | | | | | x |
| BPMS Printout Dated January 31, 2018, of Letters Sent To Applicant Lassana Magassa | 17 | | | | | | | | | | | x | | | |
| BPMS Printout, Dated January 31, 2018, of Deactivate Detail for Lassana Magassa | 18 | | | | | | | | | | | x | | | |
| BPMS Printout, Dated January 31, 2018, of Comments concerning Lassana Magassa | 19 | | x | | | | | | | | | | | | x |
| Form FD-1037, Electronic Communication ("EC") Dated October 30, 2015, Detailing Interview of Lassana Magassa | 20 | x | x | | | | | | x | x | x | x | | | x |
| | 21 | x | x | | | | | | x | | | | | | x |
| Form FD-1037, EC Dated November 28, 2016, Detailing the Attempted Interview of Lassana Magassa | 22 | x | x | x | x | | x | | x | x | x | | | | x |
| | 23 | x | x | x | x | | | | x | | x | | | | x |
| Form FD-1037, EC Dated March 29, 2017, Detailing Encounter with Lassana Magassa including E-mail Attachments | 24 | x | x | x | | | | | x | x | x | x | | | x |
| | 25 | x | x | | | | | | x | | | | | | x |
| Email Dated March 27, 2018, From Lassana Magassa to a Special Agent ("SA") with the Seattle Field Office ("SEFO") to Arrange a Meeting | 26 | x | x | | | x | | | x | | | | | | x |
| Email Dated March 27, 2018, From an SA with the SEFO to Lassana Magassa to Discuss a Change to a Meeting | 27 | | x | | | | | | | | | | | | x |

19-cv-1952
Page Disposition Totals

## Page Disposition Totals

**Total:** 27
   RIF: 10
   RIP: 17
      • FOIA Exemption(s):    12