## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LASSANA MAGASSA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>　　　　　　　Defendant. | Civil Action No. 1:19-cv-01952 (JMC) |

### MEMORANDUM OPINION

Plaintiff Lassana Magassa submitted a request to the Federal Bureau of Investigation (FBI) asking for all information that the agency had about him.[1] The FBI searched its records and released documents to him, some of which had redactions. Magassa thought the FBI's search was inadequate and that the disclosure withheld too much information. He sued the FBI, seeking to compel the agency to perform a more rigorous search and release more documents.

The Court has reviewed declarations documenting the search that was performed and explaining the rationale for withholding certain information, including one submitted *in camera* because of its sensitive nature. ECF 28. The Court concludes that the FBI performed an adequate search and sufficiently explained why it did not disclose all information. Therefore, the Court grants the FBI's Motion for Summary Judgment and, accordingly, denies Magassa's Cross-Motion for Summary Judgment.

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

## I.    BACKGROUND

The Complaint alleges the following. In 2007, after he was graduated from college, Lassana Magassa applied for a job with the FBI. ECF 1 ¶ 2. Four years later, in 2011, Magassa met with FBI agents in New York City, under the assumption that he was being interviewed for a job. *Id.* ¶ 3. The FBI agents questioned Magassa about an acquaintance of his (named "Adis" in the Complaint), then never contacted him again. *Id.* ¶¶ 4–5.

In 2015, Magassa applied to work for Delta Airlines as a service/ramp agent. *Id.* ¶¶ 6–7. U.S. Customs and Border Protection (CBP) interviewed Magassa as part of his background check for the job. *Id.* ¶ 7. In his interviews, Magassa mentioned that he was interested in working for the FBI someday, and the CBP interviewer offered to pass his resume along to colleagues in the FBI. *Id.* ¶¶ 7–8. Magassa eventually received his clearance and began working for Delta as a Cargo Customer Service Agent in June 2015. *Id.* ¶ 10.

In October 2015, CBP contacted Magassa for another interview. *Id.* ¶ 11. Magassa again mentioned that he would like to work in law enforcement and, this time, the CBP agent connected Magassa with an FBI special agent. *Id.* ¶¶ 11–12. Magassa met with the FBI agent for what he thought was an interview. *Id.* ¶¶ 13–14. But when they met for coffee, the FBI agent questioned Magassa about his Muslim faith and asked Magassa to be an informant for the FBI. *Id.* ¶ 14. Magassa declined. *Id.* ¶ 15. The FBI agent reached out to Magassa again in September 2016, but the two did not meet. *Id.* ¶ 16.

Around October 2016, Magassa alleges that his airport badge and security privileges were revoked by the Transportation Security Administration (TSA). *Id.* ¶ 17. Magassa alleges that this revocation made it impossible for him to do his job, resulting in his constructive discharge from Delta. *Id.* Around the same time, Magassa also began to experience difficulties while traveling. *Id.*

He alleges that these challenges were due to his religion and/or race, and his refusal to serve as an FBI informant. *Id.* ¶ 18.

Magassa submitted a Freedom of Information Act (FOIA) and Privacy Act request to the FBI seeking "all files, correspondence, or other records concerning [Magassa]." ECF 22-3 at 36. To assist in the search, he provided his full name, date of birth, place of birth, and social security number. *Id.* He asked the FBI to spend up to two hours searching through "automated indices," "older general (manual) indices," and "all Field Offices." *Id.* About a year later, the FBI provided nineteen redacted documents as a response. *Id.* ¶ 9. The FBI withheld certain parts of the documents, citing exemptions in the Privacy Act and FOIA. ECF 22-1 ¶ 9.

Magassa then sued the FBI in this Court, alleging that the FBI unlawfully withheld and redacted responsive records in violation of FOIA. ECF 1 ¶¶ 31–52. Specifically, Magassa alleges that the FBI failed to conduct an adequate search for responsive records, *id.* ¶¶ 53–56, insufficiently explained its rationale for invoking FOIA exemptions, *id.* ¶ 41, failed to segregate disclosable information from non-disclosable information, *id.* ¶ 45, and provided an inadequate *Glomar* response, *id.* ¶ 41.

The FBI performed a second search of its records and released twenty-seven documents. ECF 22-1 ¶ 15. But it still withheld certain information pursuant to Privacy Act Exemptions 5 U.S.C. § 552a(j)(2) (certain records maintained by law enforcement agencies), (k)(2) (investigatory material compiled for law enforcement purposes), (k)(5) (investigatory material compiled to determine an individual's eligibility for federal employment), and (k)(6) (material used to evaluate candidates for federal service). The FBI also withheld information under FOIA Exemptions 5 U.S.C. § (b)(3) (records exempted from disclosure by statute), 552(b)(6) (personnel records), (b)(7)(C) (records compiled for law enforcement purposes that could constitute an

unwarranted invasion of privacy), and (b)(7)(E) (records compiled for law enforcement purposes that would disclose investigation techniques and procedures). *Id.*

The FBI moved for summary judgment on Magassa's claims. ECF 22. The FBI argues that it properly applied FOIA exemptions to withhold information from disclosure: Exemption 3 was "invoked to redact information that is permitted to be withheld under the National Security Act of 1947;" Exemptions 6 and 7(C) were applied to redact personal identifying information and protect against "clearly unwarranted invasion of privacy;" and Exemption 7(E) was used to "excise[] information relating to law enforcement techniques and procedure." ECF 22-2 at 7. Magassa responded to the Motion for Summary Judgment, ECF 23, and the FBI replied, ECF 25.

Magassa also moved for summary judgment. ECF 24. He continues to argue that the FBI conducted an inadequate search in response to his FOIA request, improperly withheld a portion responsive records that were generated by that search, and provided insufficient explanations for the exemptions it invoked to withhold those records. ECF 24-1 at 6, 15. The FBI responded, ECF 26, and Magassa replied, ECF 27.

## II.   LEGAL STANDARD

Summary judgment is granted when the moving party "shows that there is no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the Parties present conflicting evidence on a material issue, the Court must construe the evidence in the light most favorable to the non-moving party. *Sample v. Bureau of Prisons*, 466 F.3d 1086, 1087 (D.C. Cir. 2006). In FOIA cases, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). In a FOIA case, a court may award summary judgment based on the information provided in affidavits or declarations when those documents are "relatively detailed and non-conclusory," *SafeCard Servs. Inc.*, 926 F.2d at 1200, and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). The agency bears the burden of showing that it complied with FOIA's requirements. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013).

## III.   ANALYSIS

Magassa challenges the (a) adequacy of the FBI's search; (b) the validity of the FBI's reliance upon certain FOIA exceptions to withhold information; (c) the reasonableness of the FBI's efforts to segregate disclosable information from non-disclosable information; and (d) the appropriateness of the FBI's *Glomar* response. The Court rejects these challenges and finds that the FBI satisfied its obligations under FOIA and the Privacy Act.

### A.   Adequacy of the Search

Magassa alleges that the FBI failed to conduct an adequate search of its records. ECF 1 ¶¶ 53–56. A search is adequate if it is "reasonably calculated to uncover all relevant documents." *Valencia-Lucena*, 180 F.3d at 325. Agencies must make a "good faith effort" to identify relevant records by "using methods which can be reasonably expected to produce the information

requested." *Id.* at 326. This may involve looking in more than one place if multiple sources "are likely to turn up the information requested." *Id.*

When the adequacy of an agency's search is challenged, the agency must provide "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Such affidavits are "accorded a presumption of good faith." *SafeCard Servs.*, 926 F.2d at 1200. Here, the FBI submitted a declaration from Michael G. Seidel, the Section Chief of the Record/Information Dissemination Section at the FBI. ECF 22-3 ¶ 1. Seidel explained that the FBI used the information in Magassa's FOIA request letter to design the search. *Id.* ¶ 27. The FBI searched for "Lassana Magassa" (and a three-way phonetic breakdown of that term) in the main index of its Central Records System, which includes records from FBI Headquarters and its field offices. *Id.* ¶¶ 15, 27. The search produced nineteen pages of records. *Id.* ¶ 9. The FBI then searched for "Lassana Magassa" in its secondary index after Magassa initiated this lawsuit. *Id.* ¶¶ 17, 27. That search yielded twenty-seven results. *Id.* ¶ 14. The FBI produced these records to Magassa after making redactions. *Id.*

Magassa maintains that the FBI's procedures were inadequate. While plaintiffs can provide "countervailing evidence" rebutting an agency affidavit, *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003), Magassa has not offered any evidence refuting the assertions set forth in Seidel's affidavit. Instead, Magassa relies on three arguments attacking the adequacy of the FBI's search.

*1.  Search Terms*

First, Magassa contends that the agency's declaration does not adequately demonstrate that it used all search terms likely to locate responsive records. ECF 23 at 10–11. In his FOIA request, Magassa provided his full name, date of birth, place of birth, and social security number to help

the FBI search for records concerning him. *Id.*; *see also* ECF 22-3 at 36 (Exhibit A). The FBI searched for his full name, "Lassana Magassa," which included a three-way phonetic breakdown of the name and used the information provided in Magassa's letter to facilitate the identification of responsive records. ECF 22-3 at ¶ 27. Magassa argues that searching for only his name—instead of conducting searches using other information, like his birth date or social security number—was inadequate in light of the additional information he provided. ECF 23 at 10–11. But FOIA petitioners generally "cannot dictate the search terms" of their request. *Bigwood v. Dep't of Defense*, 132 F. Supp. 3d 124, 140–41 (D.D.C. 2015). The parameters of a search are adequate so long as they "are reasonably calculated to lead to responsive documents." *Id.* at 140.

Here, it is not clear how Magassa expected the FBI to alter its search terms. Searching the FBI's immense records systems for Magassa's place of birth, for example, would potentially yield innumerable false positives, and it is unreasonable to expect the agency to wade through those records in the hope that additional responsive records might be identified. Also, any additional records yielded from searches of Magassa's place of birth, birthdate, or social security number would have to somehow discuss Magassa without using his name for them to be responsive yet undetected by the FBI's initial search for "Lassana Magassa."

In sum, the FBI's search for Magassa's full name was adequate because it was reasonably calculated to produce records that were responsive to Magassa's request for all "records concerning [him]." ECF 22-3 at 36.

### 2.  *Search Locations*

Magassa argues that the FBI did not search all locations that would be likely to contain responsive records. ECF 23 at 10. He does not suggest what other locations the FBI should have explored, though his initial FOIA request asked the FBI to search the automated indices, the older general (manual) indices, and all Field Offices. ECF 22-3 at 36.

In his declaration, Seidel provided a high-level overview of the IT infrastructure housing the FBI's records. He noted all FBI records created after July 1, 2012, are maintained in a case management system called Sentinel, though some older records might exist in prior databases, such as Automated Case Support (ACS). *Id.* ¶ 21; *see also id.* ¶¶ 19, 21 (noting that ACS still plays a significant role in records management, though it may not contain all records from the legacy Central Records System that preceded it). By searching Sentinel and ACS, *id.* ¶ 27, the FBI searched through all FBI records created after July 1, 2012, and 105 million records created before then*, id.* ¶¶ 19, 21. This is an adequate search in light of the broad request that Magassa submitted, and particularly given the dates of Magassa's contact with the FBI. The FBI looked in places that could be "reasonably expected to produce the information requested," *Oglesby*, 920 F.2d at 68, and nothing in the FBI's initial search indicated that it should dig deeper, *see Campbell v. DOJ*, 164 F.3d 20, 27–29 (D.C. Cir. 1998) (finding an FBI search to be inadequate because "tickler" records produced in the initial search indicated that the FBI should have gone further). While it is possible that stray records about Magassa exist in some unsearched locations, that possibility will always remain when judging the adequacy of a search against a "reasonableness" standard. Here, the FBI fulfilled its obligations to search in places reasonably likely to produce information about Magassa.

## B.  Exemptions

Magassa challenges the FBI's withholding of information pursuant to various FOIA exemptions. He alleges that the FBI's responses did not sufficiently show that all reasonably segregable, nonexempt materials were disclosed, and that Seidel's declaration offered conclusory explanations for the exemptions. ECF 1 ¶¶ 31–52; ECF 24-1 at 12. The FBI moved for summary judgment on this claim, arguing that each of the exemptions it relied upon were appropriately

invoked. *See* ECF 22-2 at 12–27. The Court addresses each of these exemptions in turn and concludes that the FBI properly invoked the cited exemptions.

### 1. Exemption 3

The FBI argues that it properly relied on the exemption listed in 5 U.S.C. § 552(b)(3) ("Exemption 3") to withhold information that would reveal intelligence sources and methods. ECF 22-2 at 12–14. Under that provision, non-disclosure is appropriate if the information is exempted by a statute that "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or that "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). To support its invocation of Exemption 3, the FBI cited Section 102A(i)(1) of the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 3024(i)(1), which provides that the Director of National Intelligence "shall protect from unauthorized disclosure intelligence sources and methods." ECF 22-3 ¶¶ 37–42. Section 3024(i)(1) is a valid Exemption 3 statute, *DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015), because it leaves no room for discretion on whether the information should be withheld from the public—it unambiguously instructs the Director of National Intelligence to protect "intelligence sources and methods" from unauthorized disclosure.

Magassa argues that the FBI's reasoning for invoking Exemption 3 was conclusory and did not allow for meaningful review, ECF 23 at 13, but the Court disagrees. Having reviewed Seidel's declaration, as well as the additional information submitted for *in camera* review, the Court is satisfied that the FBI appropriately withheld information that would reveal intelligence sources and investigation methods if publicly disclosed. As Seidel represented in his declaration, "disclosure of this information [would] present[] a bona fide opportunity for individuals to develop and implement countermeasures, resulting in the loss of significant intelligence information,

sources, and methods relied upon by national policymakers . . . to safeguard national security." ECF 22-3 ¶ 42.

    *2. Exemption 6 and 7(C)*

    The FBI argues that it properly invoked 5 U.S.C. § 552(b)(6) ("Exemption 6") and 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)") to redact personal identifying information of governmental employees and third-party individuals mentioned in the responsive records. ECF 22-2 at 15–22. Exemption 6 provides that personnel files need not be released if their disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Similarly, Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes" if the records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Although the FBI jointly asserted both exemptions to justify withholding certain information, it relies primarily upon Exemption 7(C) in its Motion for Summary Judgment. The Court therefore starts its analysis with Exemption 7(C) and, because it finds that the FBI adequately justified its invocation of that exception, the Court does not also need to determine the applicability of Exemption 6. *See People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 745 F.3d 535, 540-41 (D.C. Cir. 2014).

    In order for Exemption 7(C) to apply, the FBI must make a threshold showing that the records at issue were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(C). An agency's claimed purpose is entitled to more deference if that agency's principal function is law enforcement. *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014). In his declaration, Seidel stated that the withheld records "were compiled, created and/or shared in furtherance of the FBI's law enforcement, national security, and intelligence missions." ECF 22-3 ¶ 45. Because the FBI specializes in law enforcement, the Court affords this representation deference. *See Campbell v. DOJ*, 164 F.3d 20,

10

32 (D.C. Cir. 1998). Taking into account Seidel's statement and the additional information provided by the FBI for *in camera* review, the Court determines that the withheld information was compiled for law enforcement purposes.

With that established, the Court turns to the reasons that the FBI invoked Exemption 7(C) to withhold information. In evaluating each of these reasons, the Court "balance[s] the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information." *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). The person requesting the information must show that the requested information would advance a significant public interest. *Nat'l Archives and Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004). Magassa argues that the records in this case would "increase[e] the public's understanding of [] FBI operations and activities," in particular how the watch list might impair people's "right to follow a chosen profession free from government interference and the right to travel, both domestically and abroad." ECF 23 at 11–12.

Even assuming that this qualifies as a significant public interest, Magassa has not shown how the material withheld would advance that interest. The FBI invoked Exemption 7(C) to withhold identifying information of FBI employees, federal employees, and non-governmental third parties. ECF 22-2 at 17–22. As a general matter, "FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information." *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011). That is because "privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." *Id.* Magassa does not provide any reason to think this case is unique or that the identifying information withheld under Exemption 7(C) would advance the public interest he identifies, and therefore the Court grants summary judgment to the FBI on this exemption.

3. *Exemption 7(E)*

The FBI also argues that it appropriately invoked 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"). That provision allows agencies to withhold information "compiled for law enforcement purposes" to the extent that production of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). As noted above, the Court is satisfied that this information was compiled for law enforcement purposes.

The Court also concludes that production of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). In his declaration, Seidel grouped the information that was withheld into categories, including (1) information related to non-public FBI web addresses, (2) methods used by the FBI to collect and analyze information, (3) techniques for administering polygraph examinations, (4) sensitive investigative file numbers, (5) information related to the location and identify of an FBI squad, (6) information discussing the focus of a specific FBI investigation, and (7) information related to the types and dates of specific investigations. ECF 22-3 ¶¶ 57–71. Seidel then described how each category of information relates to law enforcement techniques and procedures. *Id.* To take just one example, Seidel explained how revealing information about the administration of polygraph tests could give future examinees "an idea of how they might effectively deceive FBI polygraphers, and circumvent the law enforcement purpose of polygraph examinations." *Id.* ¶ 59. This satisfactorily "demonstrate[s] logically how the release of the requested information might create a risk of circumvention of law." *Blackwell*, 646 F.3d at 42.

### C.  Segregability Obligations

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). That means that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Dir. 1998). To withhold the entirety of a document, an agency must demonstrate that it cannot segregate the exempt material from the non-exempt material. *Id.* at 949–50.

Magassa argues that the FBI's justification for not disclosing portions of certain documents was not detailed enough, and therefore did not fulfill the FBI's obligation to show why the exempt portions of the documents it produced could not be further segregated to disclose additional information. *See* ECF 23 at 13–14. The Court disagrees, finding that the FBI's Vaughn Index[2] and Seidel's declaration adequately describe the reasons for withholding the exempt portions of some responsive documents while turning over the non-exempt portions.

In his declaration, Seidel explained that the FBI identified twenty-seven responsive records. ECF 22-3 at 33. Ten of these records were released in full, and seventeen were released in part. *Id.* The Vaughn Index, which lists all twenty-seven documents, notes the specific reason that certain portions of responsive records were exempt from disclosure and not released. *See id.* at 64–67. For example, sections of a printout from the Bureau Personnel Management System were withheld under Exemption 6 because they contained "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *See id.* at 66. For other documents, the FBI cited multiple exemptions to justify its withholding,

---

[2] A Vaughn Index "consists of a detailed affidavit, the purpose of which is to permit the court system effectively and efficiently to evaluate the factual nature of disputed information." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 149 n.2 (1989).

including FOIA Exemptions 3 and 7(E). *See id.* This document-by-document analysis provides the sort of "detailed description" needed to assess the FBI's segregation efforts, and allows the Court to confirm that the FBI fulfilled its obligations.

### D.  Glomar Response

Generally, upon receiving a FOIA request, an agency must produce all responsive records, unless the records fall within one of nine exceptions. *See* 5 U.S.C. § 552(a)(3)(A), (b). But in certain circumstances, when disclosing the existence (or non-existence) of responsive records would itself cause harm cognizable under a FOIA exception, an agency may respond to the FOIA request by refusing to confirm or deny that it has relevant records. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). This is known as a "*Glomar* response." *See Kalu v. IRS*, 159 F. Supp. 3d 16, 21 (D.D.C. 2016) (discussing the name's nautical origins). An agency asserting a *Glomar* response bears the burden of showing that the mere fact of whether a record exists or not is protected from disclosure under one of the nine FOIA exemptions. *Wolf*, 473 F.3d at 374. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374–75.

Here, the FBI provided a *Glomar* response by refusing to confirm or deny whether Magassa was listed on any government watch list. ECF 22-3 ¶ 9. The FBI stated that the existence of any watch list records "is protected from disclosure pursuant to 5 U.S.C. § 552a(j)(2) and 5 U.S.C. § 552(b)(7)(E)," and so a *Glomar* response was appropriate. *Id.*; *see also id.* at 56–58. Magassa challenged that response, arguing that it failed to provide Magassa the information he would need to challenge such a designation. ECF 23 at 12–13.

Seidel explained that non-disclosure of the existence of the records was appropriate under Exemption (j)(2) of the Privacy Act, which exempts records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the

enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals." ECF 25-2 ¶ 7 (quoting 5 U.S.C. § 552a(j)(2)). Because watch list records "would be compiled in furtherance of FBI efforts to track, predict, and thwart terrorist activities," Seidel represented that the FBI appropriately declined to confirm or deny the existence of watch list records. *Id.* ¶ 8.

Seidel also contended that non-disclosure was appropriate under Exemption 7(E) of FOIA, which exempts information "compiled for law enforcement purposes" to the extent that the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *Id.* ¶ 11 (quoting 5 U.S.C. § 552(b)(7)(E)); *see also id.* ¶ 9. Seidel argued that the criteria for placing individuals on watch lists is not publicly known, so revealing the identities of people on the watch list could allow others to deduce the criteria and change their behavior to avoid government detection. *Id.* ¶ 16. Also, on a more granular level, informing an individual whether or not they are on a watch list could prompt that individual to alter their conduct and impede an FBI investigation. *Id.* ¶ 15.

These reasons are logical, and therefore the FBI's *Glomar* response is adequate. *Cf. Kalu*, 159 F. Supp. 3d at 23 (holding that a *Glomar* response from the FBI was appropriate in response to a FOIA request asking whether an individual was on a watch list). Watch lists are compiled in furtherance of the FBI's law enforcement, national security, and intelligence goals. Disclosing whether an individual is on a watch list could lead that individual or others to alter their behavior in an effort to circumvent the law. This reasoning justifies withholding the existence (or non-existence) of an individual's name on a watch list.

Finally, the Court notes that Magassa filed a "Notice of Supplemental Authority" that highlighted the *Fikre v. FBI*, 35 F.4th 762 (9th Cir. 2022). ECF 31. In that case, the Ninth Circuit held that the government does not moot an individual's lawsuit by removing them from the No Fly List and promising not to place them on the No Fly List in the future. *Id.* at 764. That holding, however, has no bearing on this case. The case does not involve FOIA requests and it does not discuss the issues being disputed in this case. Therefore, it does not change the Court's conclusion about the outcome of this case.

IV.     **CONCLUSION**

For the foregoing reasons, the Court grants the FBI's Motion for Summary Judgment and denies Magassa's Motion for Summary Judgment. A separate Order will accompany this Memorandum Opinion.

**SO ORDERED.**

DATE: August 11, 2023

_____
Jia M. Cobb
U.S. District Court Judge